

JUDGE BATTS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

13 CIV 6867

—————————————————————
RAY LEGAL CONSULTING GROUP,

    Plaintiff,

    v.

ARNOLD E. DIJOSEPH, III, ARNOLD E.
DIJOSEPH, P.C., STACEY M. GRAY, STACEY
M. GRAY, P.C., ARENT FOX LLP, DELOITTE
TOUCHE TOHMATSU SERVCES, INC. and
DELOITTE TOUCHE TOHMATSU LIMITED,

    Defendants.
—————————————————————

CIV ACTION NO.

## COMPLAINT

Plaintiff Ray Legal Consulting Group, by and through its undersigned counsel, for

its Complaint against Defendants Arnold E. DiJoseph, III, Arnold E. DiJoseph, P.C.,

Stacey M. Gray, Stacey M. Gray, P.C., Arent Fox LLP, Deloitte Touche Tohmatsu

Services, Inc. and Deloitte Touche Tohmatsu Limited, states as follows:

### NATURE OF THE ACTION

1.    After suffering almost two years of bad faith schemes, Plaintiff Ray Legal

Consulting Group ("Plaintiff" or "Ray Legal Consulting") reluctantly brings before this

Court two attorneys – Defendants Arnold E. DiJoseph, III ("DiJoseph") and Stacey M.

Gray ("Gray") – who have conspired together in an unethical "legal strategy" to coerce

the payment of over $166,000 from a former client Victor F. Caldwell ("Caldwell") and

Plaintiff – for a mere 28 hours of work and in spite of the express terms of the

Engagement Agreement – through the use of a pattern of dishonest threats and

misconduct involving knowingly frivolous claims of a "charging lien" and a series of bad faith delay and litigation avoidance tactics for no substantial purpose other than to inflict needless legal fess and expenses on Caldwell and Plaintiff by prolonging the resolution of the false claims.  In so doing, Defendants Gray and DiJoseph breached their obligations under the law, breached their contractual agreements, including their obligations of good faith and fair dealing, and breached their ethical duties as attorneys and officers of this Court.[1]

    2.      Defendants Deloitte Touche Tohmatsu Services, Inc. and Deloitte Touche Tohmatsu Limited (collectively, "Deloitte") and its attorneys Arent Fox LLP ("Arent Fox") have facilitated these schemes, in breach of their obligations of good faith and fair dealing and fiduciary duties to Plaintiff, acting in bad faith and with a bias for their own self-interest in confidentiality for the alleged conduct that was the subject of the representation.

    3.      This action is to recoup the wrongfully inflicted legal fees and expenses, as well as lost profits, incurred by Plaintiff in responding to Defendants' tortuous interference, and bad faith breaches of the covenant of good faith and fair dealing and fiduciary duties.

## JURISDICTION AND VENUE

    4.      This action arises under the laws of the State of New York.  The acts, conduct and other wrongs alleged herein substantially occurred in the State of New York.  In addition, Plaintiff and Defendants Arent Fox and DiJoseph agreed in a Confidentiality

---

[1] The conduct alleged herein against attorneys Arnold E. DiJoseph, III and Stacey M. Gray violate at least Rules 3.1, 3.2, 3.3 and 3.4 of the New York Rules of Professional Conduct.

Agreement, dated February 10, 2012, that "[t]his Agreement shall be governed by the laws of the State of New York (without giving effect to its conflicts of laws principles)."

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen of a different state – Massachusetts – than all Defendants – United Kingdom, New York, Delaware and California. The amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs. At a minimum, the amount in escrow for which Plaintiff seeks an order compelling the distribution of the funds exceeds $75,000.

6.      Venue is proper in this District pursuant to 18 U.S.C. §§ 1965 and 1391, insofar as substantially all Defendants reside in this District, and a substantial part of the events and/or conduct giving rise to this action occurred within this District.

## PARTIES

7.      Plaintiff Ray Legal Consulting Group ("Plaintiff" or "Ray Legal Consulting") is a professional services firm formed in Massachusetts, with its principal place of business at Prudential Center, 800 Boylston Street, 16th Floor, Boston, MA 02119. For purposes of diversity jurisdiction, Defendant is a citizen of Massachusetts.

8.      The principal of the Ray Legal Consulting Group, John H. Ray, III ("Ray"), resides in and is a citizen of Massachusetts. For purposes of diversity jurisdiction, Ray is a citizen of Massachusetts.

9.      Defendant Arnold E. DiJoseph, III ("DiJoseph") is an individual, an attorney admitted to practice before this Court, and upon information and belief, is a citizen of the State of New York. DiJoseph has been the principal architect of the bad faith schemes, involving serial dishonest and unethical violations of duties owed to

3

Plaintiff, including but not limited to wrongful attempts to coerce the payment of substantial sums on the basis of knowingly false and frivolous claims, and deliberate attempts to delay and avoid adjudication of his meritless claims in any forum for no substantial purpose other than to inflict needless legal fees and expenses on Caldwell and Plaintiff by prolonging the resolution of the false claims.  For purposes of diversity jurisdiction, Defendant DiJoseph is a citizen of the State of New York.

10.     Upon information and belief, Defendant Arnold E. DiJoseph, P.C. ("DiJoseph P.C.") is a New York professional corporation/law firm engaged in the practice of law in the State of New York, with its principal place of business at 50 Broadway, Suite 1601, New York, New York 10004.  For purposes of diversity jurisdiction, Defendant DiJoseph P.C. is a citizen of the State of New York.

11.     Defendant Stacey M. Gray ("Gray") is an individual, an attorney admitted to practice before this Court, and upon information and belief, is a citizen of the State of New York.  Gray is the terminated attorney who has been on a campaign of revenge for her termination, attempting to ruin her former client's prospects for a favorable settlement and coerce an exorbitant and unearned "legal fee" from him and Plaintiff with false claims of a "charging lien" in spite of the provisions of her Engagement Agreement. For purposes of diversity jurisdiction, Defendant Gray is a citizen of the State of New York.

12.     Defendant Stacey M. Gray, P.C. ("Gray P.C.") is a New York professional corporation/law firm engaged in the practice of law in the State of New York, with its principal place of business at 60 East 42nd Street, 46th Floor, New York, New York

4

10165.  For purposes of diversity jurisdiction, Defendant Gray P.C. is a citizen of the State of New York.

13.     Upon information and belief, Defendant Arent Fox LLP ("Arent Fox") is a California limited liability partnership engaged in the practice of law in the State of New York, with its principal place of business at 55 West Fifth Street, 48th Floor, Los Angeles, California 90013, and offices in New York at 1675 Broadway, New York, New York 10019.  Arent Fox is the trustee for the escrow account established pursuant to the Confidentiality Agreement.  For purposes of diversity jurisdiction, Defendant Arent Fox is a citizen of the State of California.

14.     Upon information and belief, Deloitte Touche Tohmatsu Services, Inc. is a Delaware corporation engaged in the practice of accounting services in New York, with its principal place of business at 1633 Broadway, New York, New York 10019.  For purposes of diversity jurisdiction, Defendant Deloitte is a citizen of the States of Delaware and New York.

15.     Upon information and belief, Deloitte Touche Tohmatsu Limited, Inc. is a United Kingdom private company limited by guarantee engaged in the practice of accounting services in New York, with its principal place of business at 1633 Broadway, New York, New York 10019.  For purposes of diversity jurisdiction, Defendant Deloitte is a citizen of the United Kingdom and New York.

## FACTS

**A.**    **THE GRAY AND DIJOSEPH DEFENDANTS ENGAGED IN A COERSIVE SCHEME TO FORCE PAYMENT OF AN EXHORBITANT AND UNEARNED "LEGAL FEE" FROM CALDWELL AND PLAINTIFF BY INTERFERING WITH A NEGOTIATED SETTLEMENT AND INFLICTING NEEDLESS LEGAL FEES AND EXPENSES WITH KNOWINGLY FALSE CLAIMS OF A "CHARINGING LIEN".**

16.    Victor F. Caldwell ("Caldwell") retained Defendants Stacey M. Gray ("Gray") and Stacey M. Gray, P.C. ("Gray P.C." and collectively, the "Gray Defendants") to represent him in an underlying matter, on November 11, 2011, pursuant to an Engagement Agreement signed by the parties.

17.    The Gray Defendants were terminated on December 21, 2011, for their incompetence, malpractice, breach of fiduciary duties and general misconduct amounting to good cause.  Specifically, the Gray Defendants:

- falsely represented that they would receive a one-third contingency on any settlement amount even if they were replaced — regardless of the work of any subsequent attorney — in order to coerce Caldwell into accepting a purported settlement offer;
- represented to opposing counsel that Caldwell would settle at an amount substantially below what Caldwell had agreed;
- failed to defend Caldwell's disclosure rights under Rule 1.6(b)(4) of the New York Rules of Professional Conduct;
- failed to protect and/or raise Caldwell's rights under the Americans with Disabilities Act, which would have cost Caldwell an additional $210,000 in compensation, which was secured by subsequent counsel;
- failed to address the allocation of damages in any settlement as "on account physical injury or sickness," which would have cost Caldwell approximately $90,000 in taxes on the purported settlement offer, which was secured by subsequent counsel; and
- made false representations to opposing counsel concerning a purported "lien" based on a purported settlement offer, which substantially harmed the settlement prospects of the claims.

These failures constituted gross negligence, malpractice and violated fiduciary duties the Gray Defendants owed to Caldwell under Rules 1.1(a)-(c), 1.3(b), 1.5(a) and 1.6 of the New York Rules of Professional Conduct, at a minimum.

18.     In the event of termination, the Engagement Agreement expressly provided that Gray P.C. "will charge Client for the legal fees incurred up to that date and all expenses already incurred." And in fact, Gray P.C. delivered invoices to Caldwell, the first, establishing that for the period "November 11, 2011 – December 12, 2011," Gray P.C. had only billed "20.452" at an hourly rate of "$500.00"; and the second, establishing that for the period December 13, 2011 through December 20, 2011," Gray P.C. had only billed "7.586 hours" at an hourly rate of "$500.00."

19.     Caldwell had previously paid Gray P.C. a $3,500 retainer.

20.     Less that retainer, Gray P.C. had only potentially earned approximately $10,500 in attorneys fees for the mere 28 hours of work performed during the 40 days of its representation.

21.     Immediately after the termination, also on December 21, 2011, the Gray Defendants sent a letter to Defendant Deloitte's then-attorneys Sidley & Austin LLP, claiming that it "will place a lien on Mr. Caldwell's file along with any settlements, awards and severance amounts that Deloitte pays to Mr. Caldwell," in spite of any legal basis for a "lien" applicable to Defendant Deloitte.

22.     Thereafter, the Gray Defendants, joined by Arnold E. DiJoseph, III ("DiJoseph") and Arnold E. DiJoseph, P.C. ("DiJoseph P.C." and collectively, the "DiJoseph Defendants") continued and increased their unlawful interference with false threats of a "charging lien" and frivolous, costly litigation, causing Defendant Deloitte to breach the settlement agreement negotiated by subsequent counsel.

23.     Indeed, on January 27, 2012, Defendant Deloitte's subsequent attorneys Defendant Arent Fox made clear in an email from partner Michael Bellinger, that "[t]he

only impediment is the Gray issue that I am trying to work through with my client.  I have endorsed the plan to NOTIFY Gray that her notice is flawed and that a settlement has been reached with Mr. Caldwell, and let Mr. Ray handle her.  I await the client's view.  The writing will be handled expeditiously; I need Gray out of the picture".

24.     On the basis of that representation, Caldwell and Plaintiff agreed to the notification plan, and Bellinger contacted Defendant Gray, informing her of the settlement.  At that point, the parties had reached an agreement on the material terms of the agreement, sufficient to constitute an enforceable contract under the law.

25.     On February 1, 2012, Defendant Gray sent a series of threatening emails, falsely claiming an enforceable "lien" and threatening frivolous, costly legal action against Defendant Deloitte if it released the funds agreed to as part of the settlement agreement.

26.     Defendant Gray retained attorney Leonard Benowich ("Benowich") to initiate a series of equally false and threatening communications on February 1, 2012. Shortly after learning of the facts of the case in a series of conference calls, however, Benowich ceased his representation of the Gray Defendants.

27.     Thereafter, the DiJoseph Defendants replaced Benowich on February 2, 2012, continuing the false claims regarding a "charging lien" and threatening Defendant Deloitte with frivolous, costly litigation if it released the funds agreed to as part of the settlement agreement.

28.     On February 8, 2012, after Plaintiff and Deloitte had already negotiated the material terms of the settlement agreement sufficient to constitute an enforceable contract, Defendant Deloitte's attorney Bellinger demanded an additional, burdensome

Confidentiality Agreement placing a substantial amount of the settlement funds in escrow and refusing to release them, stating: "The equation is quite simple: no Confidentiality Agreement, no settlement."

29.    To mitigate the substantial damages caused by the Gray and DiJoseph Defendants' tortuous interference, Plaintiff and Defendants Arent Fox and DiJoseph entered into a Confidentiality Agreement on February 10, 2012.

30.    In the agreement, the parties stated, "[t]his Confidentiality Agreement is made and entered into by and among Ray Legal Consulting Group ("Ray") (representing Victor Caldwell, "Employee"), Arnold E. DiJoseph PC ("DiJoseph") (representing Stacy Gray) and Arent Fox LLP ("Arent Fox"), representing Deloitte Touche Tohmatsu Services, Inc. and Deloitte Touche Tohmatsu Limited (collectively "Deloitte")."

31.    The parties agreed:  "[t]hat counsels Ray and Gray have a dispute regarding legal fees for legal services purportedly rendered to Mr. Caldwell."  Plaintiff never agreed, however, that the "dispute" had any merit, which it did not.

32.    In addition, the parties further agreed that: "[t]he apportionment of the fees between Ray and Gray will be determined either by binding arbitration or by a court of competent jurisdiction.  No funds will be distributed from the Escrow Account until a final order is issued by a Court of competent jurisdiction or until Ray and Gray reach a binding settlement of their claims and have each notified Deloitte of such binding settlement."

33.    In an effort to expedite a resolution, and explain Caldwell's position on the law, Plaintiff reached out to Defendant DiJoseph, inviting him to participate in a cooperative resolution, writing on February 7, 2012:

Arnold [DiJoseph], as I said before, we view this as a cooperative effort to put the issue before the court on the most limited facts as possible, and in that vein are willing to discuss a joint stipulation of facts to avoid the need for affidavits on the quantum meruit issue. In the absence of a joint petition and stipulated facts, we believe a petition for an order to show cause directed to your client is the most sensible, to demonstrate the quantum meruit value of her services under New York law (to which we would respond), and then, if necessary, an order to show cause after the quantum meruit determination to my client to show cause regarding the basis for the termination (to which you may respond). But we anticipate the quantum meruit value determination will bring this matter to a swift conclusion.

34.     Knowing he had no legitimate basis for any claim of a "charging lien," Defendant DiJoseph refused to engage in any cooperative efforts, but set out a "legal strategy" of bad faith delay and litigation avoidance, for no substantial purpose other than to inflict needless legal costs and expenses on Caldwell and Plaintiff by prolonging the resolution of the false claims in hopes of coercing the payment of an exorbitant and unearned "legal fee" wrongfully demanded by the Gray Defendants.

35.     Defendant DiJoseph made his "legal strategy" clear in an email on February 16, 2012, that "your belief that this will be resolved quickly is laughable since no matter the outcome there will be an appeal here so this case will take well more than a year and probably two. Please stop e-mailing me."[2]

36.     Rather than attempt to resolve their claimed dispute in good faith, the Gray and DiJoseph Defendants have repeatedly over the course of the last almost two-

---

[2] In spite of the fact that Gray P.C. had no right to an arbitration in the AAA, Plaintiff even offered on February 17, 2012, to arbitrate in the AAA under an expedited schedule, stating:

We would be willing to consider a request to arbitrate and voluntarily withdraw the petition, so long as you agree that: (1) an arbitrator must be selected within 10 days of the date of a joint submission to the AAA; (2) there would be no discovery, (3) the hearing must occur within 30 days of the date of the joint submission; (4) the arbitrator must decide the fee dispute based upon the law of quantum meruit in New York, and must explain the basis for his decision; and (5) following any award Mr. Caldwell is entitled to challenge the award on termination for cause grounds.

Defendant DiJoseph refused. He had no intention of adjudicating the merits, but merely wrongfully prolonging any proceedings in the hopes of coercing the payment of an exorbitant and unearned "legal fee."

years actively worked to undermine the whole purpose of the Confidentiality Agreement and prevent Plaintiff from exercising its rights thereunder, by preventing any adjudication of their frivolous claims of a "charging lien."

**B.     THE GRAY AND DIJOSEPH DEFENDANTS HAVE ENGAGED IN A 2-YEAR BAD FAITH CAMPAIGN TO AVOID ADJUDICATION OF THEIR FRIVOLOUS "CHARINGING LIEN" CLAIMS FOR NO SUBSTANTIAL PURPOSE OTHER THAN TO INFLICT NEEDLES LEGAL FEES AND EXPENSES ON CALDWELL AND PLAINTIFF IN HOPES OF COERCING THE PAYMENT OF AN EXHORBITANT AND UNEARNED "LEGAL FEE".**

37.     Since entering into the Confidentiality Agreement, the Gray and DiJoseph Defendants have engaged in an almost two-year campaign of wrongful delay and litigation avoidance to prevent any adjudication of the merits of their "charging lien" claims in any forum, with knowingly false claims and bad faith schemes for no substantial purpose other than to inflict needless legal fees and expenses on Caldwell and Plaintiff in hopes of coercing the payment of an exorbitant and unearned "legal fee," in spite of the terms of the Engagement Agreement, which do not provide for such a fee.

38.     Caldwell and Plaintiff have filed actions in state court, arbitration and federal court, only to have the Gray and DiJoseph Defendants make false and bad faith claims to prevent any substantive adjudication and delay the proceedings.  Caldwell and Plaintiff have made multiple settlement offers in excess of $110,000 to avoid further litigation of the claimed approximately $166,000 fee.  The Gray and DiJoseph Defendants merely set out a "legal strategy" to exact revenge through needless legal fees and expenses, and the waste of judicial resources.

**i.**      **The Gray And DiJoseph Defendants Wrongfully Demanded Arbitration Under False Pretenses And Then Refused To Participate In The Arbitration With Knowingly False Claims Of A "Charging Lien."**

39.      To resolve the issue of the "charging lien" – the only basis for a claimed fee dispute with Plaintiff – Caldwell filed, through Plaintiff as counsel, a special proceeding for expedited review in the New York Supreme Court, New York County, against the Gray Defendants, entitled <u>Victor F. Caldwell v. Stacey M. Gray and Stacey M. Gray, P.C.</u>, Index No. 101658/2012 (N.Y. Sup. Ct., N.Y. Co. 2012) (the "original action"), an action that is still pending.[3]

40.      In that action, Plaintiff demonstrated that the Gray and DiJoseph Defendants' claims of a "charging lien" were without merit.

41.      At that time, New York Judiciary Law Section 475 only provided a "charging lien" to "the attorney who appear[ed] for a party" in "the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim".[4]

42.      In the Engagement Agreement, Defendant Gray P.C. expressly refused to perform any of the services required by New York Judiciary Law Section 475 for a

---

[3] Caldwell filed an action in state court, in good faith, based on Defendant Gray's repeated representations that she was seeking a *quantum meruit* determination of her fees, consistent with New York law under <u>Cohen v. Grainger, Tesorier & Bell</u>, 622 N.E.2d 290 (N.Y 1993); <u>In re Montgomery</u>, 272 N.Y. 323 (1936); <u>Finkelstein v. Kins</u>, 124 A.D.2d 92 (N.Y. App. Div. 1st Dep't 1987), which disregards the Engagement Agreement terms, and based on Defendant Gray's refusal to enter into the arbitration provided by the Engagement Agreement.

[4] New York Judiciary Law Section 475 (2012) read in full: "From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien."

"charging lien," and never performed such services, placing it on notice that it did not have any legitimate claim to a "charging lien."

43.    Defendant Gray P.C. expressly agreed in the Engagement Agreement that it was not retained for "the filing of a lawsuit or any documents in a court, city or statement department" and expressly refused to "agree to represent Client in any type of formal litigation including the filing of a complaint or taking of any other legal action in court."

44.    On that basis, in the New York Supreme Court action, Caldwell requested a declaratory judgment that "Respondents Stacey M. Gray and Stacey M. Gray, P.C. ('Gray P.C.') are not entitled to any statutory, contractual or other lien against any settlement proceeds and any settlement funds may lawfully be released, without any liability to Gray P.C., as directed by Petitioner, to his counsel."

45.    In response, on March 13, 2012, the Gray and DiJoseph Defendants filed a motion to dismiss, arguing, contrary to prior claims of a right to a *quantum meruit* determination, that the Engagement Agreement should be enforced and that it provided for arbitration.  The Gray and DiJoseph Defendants, however, had no intention of participating in the arbitration provided by the Engagement Agreement.

46.    Plaintiff was forced to respond to the disingenuous request for arbitration, at needless additional expense and costs.

47.    The Engagement Agreement provided that "[i]f any fee dispute should arise between you and the Firm that cannot be resolved informally, it shall be settled by final and binding arbitration in New York City pursuant to Part 137 of the Rules of the

Client Administrator – Attorney Fee Dispute Resolution Program." The agreement did not provide any other forum for the arbitration of a "fee dispute."[5]

48.     In a good faith effort to resolve the issue, Plaintiff made a settlement offer of "$56,244.38 for your client," on July 13, 2012 and in several subsequent emails, including on September 6, 2012, but the Gray and DiJoseph Defendants refused to even engage in any settlement discussions. On September 6, 2012, DiJoseph stated that "[m]y client has informed me not to engage in settlement discussion ...." The Gray and DiJoseph Defendants were intent merely on inflicting injury, with their frivolous claims and wrongful "legal strategy" of delay and litigation avoidance.

49.     On August 28, 2012, the New York Supreme Court issued an order granting the motion to dismiss and providing that "petitioner may arbitrate the within fee dispute in accordance with the engagement agreement."

50.     Therefore, on September 6, 2012, Caldwell, through Plaintiff as counsel, filed a fee dispute with the Attorney Fee Dispute Resolution Program, in accordance with the terms of the Engagement Agreement and the express order of the court.

51.     The Gray and DiJoseph Defendants refused to participate in the arbitration. Instead, they filed motions falsely claiming that they had a "charging lien" based upon "recent changes in Sections 475 and 475-a of the Judiciary Law which took effect on January 1, 2013" for an amount in excess of the jurisdictional amount and that Caldwell "had absolutely no interest or ability to obtain any additional money from the Arbitration," based on his Settlement Agreement.

---

[5] The Engagement Agreement only provided that "[a]ll other types of disputes [i.e., other than a "fee disputes"] that should arise between us that cannot be resolved informally shall be settled by final and binding arbitration New York City before a single arbitrator in accordance with the Rules of the American Arbitration Association then in effect in New York City."

52.    No reasonable attorney could have made such claims in good faith.

53.    Indeed, the Gray and DiJoseph Defendants argued that the dispute was not between Caldwell and the Gray Defendants, but between Plaintiff and Gray P.C., in spite of: i) the New York Supreme Court's order, ii) Defendant Gray's own representations in court to enforce the Engagement Agreement and iii) Defendant Gray's threatening emails, including on February 1, 2012, that "**there is a current attorney fee dispute between Mr. Caldwell and my office**." Defendant Gray repeated her admission that the dispute was between Caldwell and Gray P.C. in at least 4 other communications.

54.    Defendant DiJoseph made these knowingly false representations, however, because the Attorney Fee Dispute Resolution Program, pursuant to Section 137.1(a) of the Rules of the Client Administrator, could not address any "claims involving substantial legal questions," and would be forced to dismiss the action.

55.    Plaintiff was forced to respond to the false and frivolous claims, at needless additional expense and costs.

56.    The Attorney Fee Dispute Resolution Program dismissed the action on January 7, 2013, for lack of "jurisdiction" because "the Claim amount exceeded $50,000" based on the knowingly false representations of Defendant DiJoseph of a "charging lien."

ii.    **The Gray And DiJoseph Defendants Returned To The New York Supreme Court With Knowingly False Claims That Caldwell Had "Waived" His Rights.**

57.    On February 25, 2013, the Gray and DiJoseph Defendants returned to the New York Supreme Court (where they had previously demanded arbitration under the Engagement Agreement) with their false claims that Caldwell "had absolutely no interest or ability to obtain any additional money from the Arbitration," based on his Settlement Agreement, claiming to have "new evidence."

58.     Defendant DiJoseph knowingly and falsely represented to the court that "Caldwell had already waived his right to dispute attorneys fees in any forum, including arbitration before the American Arbitration Association based on his and Ray's settlement agreement".

59.     In addition, Defendant DiJoseph knowingly and falsely represented to the court that "Caldwell had no interest or ability to obtain any additional money from fee arbitration and has no legal ability to deny Gray her contingency fees."

60.     No reasonable attorney could have made such claims in good faith.

61.     Plaintiff was forced to respond to the false and frivolous claims, at needless expense and costs.

62.     In addition, in spite of the frivolous misrepresentations, and knowing that the Gray Defendants had no reasonable position on the law, Plaintiff still made a reasonable settlement offer to the Gray and DiJoseph Defendants, including Defendant Deloitte, through which "[w]e can also all take a bit of a loss and move on" and "[t]hat means then, Arnold [DiJoseph] your client walks away with $111,111.11".[6]  None of the Defendants responded.

63.     In an opinion dated July 10, 2013, the New York Supreme Court flatly rejected Defendant DiJoseph's claims as false.

64.     The court wrote that "the portion of the Settlement Agreement proffered by respondents **do not provide that petitioner has waived his right to dispute attorneys' fees, as claimed by respondent**. ... In fact, the portion of the Settlement

---

[6] Plaintiff was willing to entertain the higher offer because, as part of the offer, the higher amount would have been financed by contributions from Defendant Deloitte, and Plaintiff had no interest or concern in amounts Defendant Deloitte was willing to pay to Defendant Gray to resolve the matter, particularly since these issues were facilitated by Defendant Deloitte's breach of the negotiated settlement agreement.

Agreement proffered by respondents herein, specifically provides binding arbitration as an option to determine any claims relating to attorneys' fees."

65.     The court denied DiJoseph's false and frivolous motion.

66.     In spite of the court's absolute rejection of the Gray and DiJoseph Defendants' frivolous misrepresentations, Plaintiff again attempted to resolve the matter without further litigation, on August 5, 2013, offering "an immediate settlement with Ms. Gray of $50,000," a lesser amount since the court rejected their claims.  The Gray and DiJoseph Defendants refused to engage in any discussion, stating, "Offering Money that has already been rejected is a waste of time."

### iii.     The Gray And DiJoseph Defendants Abandoned Their False "Charging Lien" Claims In Federal Court In Bad Faith To Avoid A Final Adjudication Of The Merits.

67.     To avoid the clear language of the Engagement Agreement and its termination provisions, as well as the New York Supreme Court's refusal to substitute Plaintiff for Caldwell in the original action, on July 29, 2013, the Gray and DiJoseph Defendants filed a Verified Complaint in the New York Supreme Court against Plaintiff Ray Legal Consulting Group, entitled Stacey M. Gray, P.C. v. Ray Legal Consulting Group, Index No. 156885/2013 (N.Y. Sup. Ct., N.Y. Co. 2013).

68.     No reasonable attorney could have filed such an action in good faith, after Bonnaig v. Walton, 968 N.Y.S.2d 368 (N.Y. Sup. Ct., N.Y. Co. 2013).[7]

69.     Plaintiff was forced to respond to the frivolous filing, at needless additional expense and costs.

---

[7] Indeed, to date, the Gray and DiJoseph Defendants have failed to re-file any amended action based on New York Judiciary Law Sections 475 and 475-a, in spite of their repeated claims of a "charging lien" and a dispute with Plaintiff, the whole purpose of the Confidentiality Agreement.

70.     And still, on August 22, 2013, prior to bringing the Gray and DiJoseph Defendants' frivolous Verified Complaint to this Court, Plaintiff attempted to broker a settlement agreement directly with Defendant Deloitte, which would have provided "$100,000 to Ms. Gray's firm," to bring the matter to a conclusion without wasting further time and effort, including the resources of the Court.   Defendant Deloitte refused to even respond.

71.     On September 9, 2013, therefore, Plaintiff removed the state action to this Court, in Stacey M. Gray, P.C. v. Ray Legal Consulting Group, No. 13-6336 (KPF) (S.D.N.Y. 2013), and prepared motion to dismiss papers.

72.     In the Verified Complaint, the Gray and DiJoseph Defendants admitted that their claims of a "charging lien" rested on "Judiciary Law Sections 475 and 475-a, as amended." They asserted no other basis for their claims.

73.     The Gray and DiJoseph Defendants also admitted that "[o]n or about December 21, 2011, Caldwell ... discharged [Gray P.C.] as his attorney," and necessarily that neither Defendant Gray nor Gray P.C. performed any work for Caldwell after December 21, 2011.

74.     The amendments to New York Judiciary Law Sections 475 and 475-a, however were not enacted until October 3, 2012, and became effective on January 1, 2013 – over one year after Defendant Gray P.C.'s termination.

75.     Defendant DiJoseph had knowledge that the changes "took effect on January 1, 2013," as he wrote in a letter on January 4, 2013.

76.     Moreover, on June 3, 2013 – almost 2 months prior to the filing of the Gray and DiJoseph Defendants' complaint – in Bonnaig v. Walton, 968 N.Y.S.2d 368

18

(N.Y. Sup. Ct., N.Y. Co. 2013), the New York Supreme Court, New York County decided that **the amendments to New York Judiciary Law Sections 475 and 475-a were not retroactive, expressly concluding that only "prospective application is proper."**

77.     A Lexis or Westlaw search of "'Judiciary Law § 475' w/p retroactive" in the New York state cases database would have returned *Bonnaig*, *and only Bonnaig*, in less than 3 minutes from signing into those online systems, the standard for legal research among lawyers.[8]  There was no question that this action was frivolous

78.     On September 10, 2013, Plaintiff emailed Defendant DiJoseph, with a copy to Defendant Deloitte's attorney Bellinger, stating:

> Arnold [DiJoseph]: I write, pursuant to Rule 3A of Judge Failla's Individual Rules of Practice in Civil Cases, to ask whether you consent to Defendant's motion to dismiss and request for sanctions, prior to our submission of a pre-motion letter to the Court at the end of the day tomorrow, Wednesday, September 11, 2013.  The motion papaers have already been prepared.  *Bonnaig v. Walton*, 968 N.Y.S.2d 368 (N.Y. Sup. Ct. N.Y. Co. 2013) makes clear that the amendments to New York Judiciary Law Sections 475 and 475-a are not retroactive, and therefore that your client cannot state a claim for a "charging lien" under those statutes.  *Bonnaig* was decided on June 3, 2013, almost 2 months prior to the filing of your complaint.  It is clear that there was absolutely no basis for your complaint under New York law, as we will explain in our motion, principally relying on *Bonnaig*, as well as the other cases in New York that discuss retroactivity, including but not limited to *Majewski v. Braodalbin-Perth Cen. Sch. Dist.*, 91 N.Y.2d 577 (N.Y. 1998) and *Deutsch v. Catherwood*, 31 N.Y.2d 487 (N.Y. 1973).

> To the extent that you are willing to consent to a stipulated dismissal with prejudice, pay all removal filing and postage costs ($425.00) and waive any right to appeal, we will agree not to file the motion to dismiss and request for sanctions for your meritless filing.  Please let me know (1) whether you consent to the motion to dismiss for purposes of the pre-motion conference letter and/or (2) whether you are willing to agree to this proposal by tomorrow close of business, 5:00PM EST, as I will be filing our pre-motion letter with the Court at that time.

---

[8] A simple and basic search of "Judiciary w/s Law w/s 475 w/s amendment" would have only retrieved 7 cases, the second of which would have been *Bonnaig*.

79.     Defendant DiJoseph never responded.

80.     As a result, on September 11, 2013, Plaintiff emailed a pre-motion letter, requesting a pre-motion conference for a motion to dismiss the Verified Complaint to the Court, with a copy to Defendant DiJoseph.

81.     In response to the pre-motion letter, acknowledging *sub silento* the frivolousness of the claims and in a transparent attempt to avoid any adjudication of the "charging lien" claim upon which the parties entered into the Confidentiality Agreement, Defendant DiJoseph filed a Rule 41 Notice of Voluntary Dismissal on September 12, 2013.

82.     On September 13, 2013, Plaintiff notified Defendant Deloitte that the Gray and DiJoseph Defendants refused to adjudicate the very claim upon which they had previously threatened the parties.  Plaintiff demanded release of the funds in the escrow account, based on the bad faith breach of the covenant of good faith and fair dealing by the Gray and DiJoseph Defendants, and the clear case law establishing that Gray P.C. never had any basis for a "charging lien."

83.     In an email responding to the demand, on September 16, 2013, Defendant DiJoseph could offer no legitimate explanation for his misconduct, except to state "Mr. Ray chose to remove the matter to Federal Court.  Our answer to that was to voluntarily dismiss the complaint as drafted which was our prerogative to do."  Defendant DiJoseph claimed that Plaintiff could "commence the same action on his own," making clear that the dismissal was for no substantial purpose other than to delay or prolong the adjudication of the merits and inflict needless expenses and costs to Caldwell and Plaintiff.

20

84.     On September 18, 2013, Defendants Deloitte and Arent Fox refused to release the escrow funds, in spite of the clear case law establishing that no "charging lien" existed and the Gray and DiJoseph Defendants' two-year campaign to delay and avoid any adjudication of the issue, including their most recent voluntary dismissal in this Court, in breach of the covenant of good faith and fair dealing.

85.     Defendant Deloitte's refusal was in bad faith and wrongfully based on its own bias and self-interest in maintaining the confidentiality of its Settlement Agreement, and the underlying alleged conduct.

## CAUSES OF ACTION

### COUNT I – TORTIOUS INTERFERENCE
### (against Defendants Stacey M. Gray, Stacey M. Gray, P.C., Arnold E. DiJoseph, III, and Arnold E. DiJoseph, P.C.)

86.     Plaintiff hereby incorporates by reference Paragraphs 1 through 85 as if set forth fully herein.

87.     Caldwell and Plaintiff had a legally enforceable contractual relationship with Defendant Deloitte, as well as a prospective economic advantage and/or business relationship.  The Gray and DiJoseph Defendants had knowledge of the relationship, and wrongfully induced Defendant Deloitte to breach its agreement with false claims of a "charging lien" and threats of frivolous, costly litigation.

88.     The Gray and DiJoseph Defendants deliberately participated in a dishonest and unethical scheme to coerce money from Caldwell and Plaintiff on the basis of knowingly false claims of a "charging lien" without any legal basis, and to inflict needless legal fess and expenses on Caldwell and Plaintiff as a purported "legal strategy" to force the payment of an exorbitant and unearned "legal fee," preventing the payment

21

of amounts that Defendant Deloitte was obligated to pay Caldwell and Plaintiff, and adding unnecessary additional expense and delay in receiving any payment.

89.     Indeed, in furtherance of their scheme, the Gray and DiJoseph Defendants engaged in a pattern of overt acts over almost two years, including but not limited to false misrepresentations before the New York Supreme Court and the New York Attorney Fee Dispute Resolution Program, and bad faith voluntarily dismissal of proceedings in this Court to prevent the adjudication of the merits and delay the adverse resolution of their frivolous legal claims for no substantial purpose other than to inflict needless legal fees and expenses on both Caldwell and Plaintiff.

90.     The Gray and DiJoseph Defendants acted with malice and intent to injure both Caldwell and Plaintiff with their knowingly false claims in order to coerce the payment of an exorbitant and unearned "legal fee" in spite of the terms of the Engagement Agreement.

91.     As a direct and proximate cause of Defendants' conduct, Plaintiff suffered damages.

### COUNT II – BREACH OF THE CONVENANT OF GOOD FAITH AND FAIR DEALING
### (against all Defendants)

92.     Plaintiff hereby incorporates by reference Paragraphs 1 through 91 as if set forth fully herein.

93.     Plaintiff and Defendants DiJoseph P.C. and Arent Fox entered into a Confidentiality Agreement, an enforceable contract under New York law, for which Defendant Arent Fox served as the trustee of the escrow fund established thereunder.  In addition, Plaintiff and Defendant Deloitte entered into a Settlement Agreement, an enforceable contract under New York law.  The purpose of the agreement (and in part the

Settlement Agreement) was to establish a procedure to resolve the Gray and DiJoseph

Defendant's knowingly false claims of a "charging lien" and therefore claimed attorney

fee dispute with Plaintiff.

94.     Under New York law, every contract has an implied covenant of good

faith and fair dealing.

95.     Defendant DiJoseph P.C. breached the implied covenant of good faith and

fair dealing by engaging in a series of misconduct and schemes with Defendant DiJoseph

and the Gray Defendants that undermined the whole purpose of the Confidentiality

Agreement and wrongfully prevented Plaintiff from exercising its rights thereunder, by

preventing any adjudication of their frivolous claims of a "charging lien," adding

additional delay and costs.  In only their most recent misconduct, after notice of a request

to Judge Failla in Stacey M. Gray P.C. v. Ray Legal Consulting Group, No. 13-CV-6336

(KPF) (S.D.N.Y. 2013), for a pre-motion conference prior to filing a motion to dismiss

on the issue of a "charging lien," Defendant DiJoseph P.C. voluntarily dismissed the

action, admitting it had no legitimate purpose but that "Mr. Ray chose to remove the

matter to Federal Court. Our answer to that was to voluntarily dismiss the complaint as

drafted which was our prerogative to do." as a matter of "legal strategy."

96.     There was no substantial purpose for the dismissal other than to inflict

needless legal fess and expenses on Caldwell and Plaintiff by prolonging the resolution of

the Gray and DiJoseph Defendants' false claims.

97.     Defendants Deloitte and Arent Fox witnessed and had knowledge of these

acts, as Plaintiff provided email and telephone updates directly to Defendant Deloitte's

attorney Bellinger.  Defendant Arent Fox also monitored the proceedings and attended the arbitration hearing.

98.     Upon proper demand on September 14, 2013, and after notice of the breach of the covenant of good faith and fair dealing, Defendants Deloitte and Arent Fox wrongfully refused to release the funds in escrow, in spite of (1) the obvious lack of any good faith legal basis for a "charging lien," as demonstrated by adverse and controlling legal precedent and (2) the almost two year pattern of misconduct by Defendant DiJoseph P.C. to delay and avoid any adjudication of the issue of the "charging lien," and preventing Plaintiff from exercising its rights under the Confidentiality Agreement, including but not limited to the most recent voluntary dismissal to avoid Judge Failla from ruling on Plaintiff's forthcoming motion to dismiss.  The substance and cases of the motion to dismiss were disclosed to Defendant DiJoseph, as well as copied to Defendants Deloitte and Arent Fox.

99.     Defendants Deloitte and Arent Fox refused to release the funds in bad faith, and with a bias for their self-interest in maintaining the confidentiality of the Settlement Agreement, and the conduct alleged therein, in spite of Defendant DiJoseph's breach.

100.    As a direct and proximate cause of Defendants' conduct, Plaintiff suffered damages.

## COUNT III – CIVIL CONSPIRACY
### (against Defendants Stacey M. Gray, Stacey M. Gray, P.C., Arnold E. DiJoseph, III, and Arnold E. DiJoseph, P.C.)

101.    Plaintiff hereby incorporates by reference Paragraphs 1 through 100 as if set forth fully herein.

102.    The Gray and DiJoseph Defendants entered into an agreement for the purpose of engaging in an unethical "legal strategy" to coerce an exorbitant and unearned "legal fee" through the use of a pattern of dishonest threats and misconduct involving knowingly false and frivolous claims of a "charging lien" and a series of bad faith delay and litigation avoidance tactics for no substantial purpose other than to inflict needless legal fees and expenses on Caldwell and Plaintiff by prolonging the resolution of the false claims.

103.    In furtherance of that plan and purpose, the Gray and DiJoseph Defendants intentionally participated in a series of overt bad faith acts over almost two years, including but not limited to false misrepresentations before the New York Supreme Court and the New York Attorney Fee Dispute Resolution Program, and the voluntarily dismissal of proceedings in this Court to prevent the adjudication of the merits and delay the adverse resolution of their frivolous legal claims.

104.    The Gray and DiJoseph Defendants acted with malice and intent to injure both Caldwell and Plaintiff with their knowingly false claims merely to coerce money to which they were not entitled from Caldwell and Plaintiff.

105.    As a direct and proximate cause of Defendants' conduct, Plaintiff suffered damages.

## COUNT IV – BREACH OF FIDUCIARY DUTY
### (against Defendants Deloitte Touche Tohmatsu
### Services, Inc., Deloitte Touche Tohmatsu Limited and Arent Fox LLP)

106.    Plaintiff hereby incorporates by reference Paragraphs 1 through 105 as if set forth fully herein.

107.    By entering into the Settlement Agreement and Confidentiality Agreement establishing an escrow fund for the benefit of Caldwell and Plaintiff, the only parties with legitimate existing legal and contractual claims to the fund, and participating in its management, Defendants Deloitte and Arent Fox, as trustee of the escrow fund, entered into a fiduciary relationship with Plaintiff.

108.    Defendant Deloitte and Arent Fox owed fiduciary duties of good faith, loyalty and due care in the exercise and administration of the escrow fund consistent with the terms of the Settlement Agreement and Confidentiality Agreement, and the law in the State of New York, including but not limited to the implied covenant of good faith and fair dealing.

109.    Defendant Deloitte and Arent Fox did not owe any fiduciary duties to the Gray or DiJoseph Defendants, as neither of them had any existing legal claim to the fund.

110.    Over the past almost two years, Defendant DiJoseph P.C. wrongfully breached its duty of good faith and fair dealing under the Confidentiality Agreement, by engaging in a series of misconduct and schemes with Defendant DiJoseph and the Gray Defendants that undermined the whole purpose of the Confidentiality Agreement and wrongfully prevented Plaintiff from exercising its rights thereunder, by preventing adjudication of their frivolous claims of a "charging lien," including but not limited to at least the dismissal of their own case from this Court for no substantial purpose other than to delay and avoid adjudication of their false claims of a "charging lien."

111.    Defendants Deloitte and Arent Fox witnessed and had knowledge of these acts.

112.    Upon Defendant DiJoseph's breach of the covenant of good faith and fair dealing, Plaintiff made due demand to Defendants Deloitte and Arent Fox to release the funds in the escrow account.

113.    Defendants Deloitte and Arent Fox wrongfully refused to release the funds in bad faith and with a bias for their own self-interest in maintaining the confidentiality of the Settlement Agreement, and the conduct alleged therein.  Defendant Deloitte wrongfully placed its own self-interest in the confidentiality of the Settlement Agreement before the interest of its fiduciaries, in particular Plaintiff, in conflict with and in breach of the fiduciary duties owed to Plaintiff.  Defendant Arent Fox equally in bad faith placed the interests of its client, Defendant Deloitte, before the interests of its fiduciary, Plaintiff.

114.    As a direct and proximate cause of Defendants' conduct, Plaintiff suffered damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment from the Court:

a)      awarding compensatory and punitive damages against all Defendants in an amount to be proven at trial, including but not limited to the attorneys fees and expenses, as well as lost profits, incurred in responding to the tortuous interference, bad faith breaches of the covenant of good faith and fair dealing and fiduciary duties by Defendants, together with interest thereupon;

b)      issuing an order to Arent Fox LLP, as trustee of the escrow account, to release the funds as directed by Victor F. Caldwell;

c)      awarding reasonable attorneys' fees, expenses and costs incurred in connection with the institution and prosecution of this action, and

d)      awarding such other and further relief as the Court deems just and appropriate under the circumstances.

Dated: New York, New York
          September 24, 2013

Respectfully submitted,

RAY LEGAL CONSULTING GROUP


By: _____
John H. Ray, III (#JR1177)

Ray Legal Consulting Group
133 Olde Forge Road
Hanover, MA 02339
(617) 645-3000
(781) 878-3002 (fax)

jray@raylegalconsulting.com

*Attorneys for Plaintiff Ray Legal Consulting Group*