UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------X

RAY LEGAL CONSULTING GROUP,

                             Plaintiff,

              v.

ARNOLD E. DiJOSEPH, III, *et al.*,

                        Defendants.

--------------------------------------------------------X

| |
|---|
| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: __August 8, 2014__ |

13 Civ. 6867 (KPF)

<u>OPINION AND ORDER</u>

KATHERINE POLK FAILLA, District Judge:

      The instant motions are but the latest skirmishes in a protracted war between the present and former attorneys of an individual client over the apportionment of an escrowed fund for legal fees.[1]  Current counsel, Plaintiff Ray Legal Consulting Group, commenced this action against former counsel, Stacey M. Gray, her law firm, and other individuals and entities that are alleged to have touched on the fee dispute (collectively, "Defendants").  In the Complaint, Plaintiff claims that Defendants acted in concert to deprive Plaintiff of fees rightfully owed to it, and further claims that this conduct amounted to tortious interference with an economic advantage and/or a business relation, tortious interference with a contract, civil conspiracy, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty.

---

[1]      The Court is issuing today an Opinion and Order in a related litigation, *Ray Legal Consulting Group* v. *Stacey M. Gray, et al.*, No. 13 Civ. 6866 (KPF), involving only the two counsel.

For the most part, Plaintiff's obvious frustration with Defendants does not translate into viable causes of action.  Plaintiff has failed to state a claim for all claims except its claim for tortious interference with a contract.  For this reason, Defendants' motions to dismiss are granted as to all claims but that claim.

## BACKGROUND[2]

### A.    The Parties' Relationships

### 1.    The Representations of Caldwell by Gray and Ray

On November 11, 2012, Victor F. Caldwell ("Caldwell") retained Defendants Stacey M. Gray ("Gray") and Stacey M. Gray, P.C. ("Gray P.C.") (collectively, the "Gray Defendants") to represent him in a dispute with his former employer, Defendants Deloitte Touche Tohmatsu Services, Inc. and Deloitte Touche Tohmatsu Limited (collectively, "Deloitte").  (*See* Compl. ¶ 16, Bellinger Decl., Ex. B).  In aid of that representation, Caldwell and the Gray

---

[2]    The facts contained in this Opinion are drawn from the Complaint ("Compl.") (Dkt. #1); the Declaration of Arnold E. DiJoseph, III and Arnold E. DiJoseph, P.C. in Support of Defendants' Motion for an Order Dismissing This Action in Its Entirety ("DiJoseph Decl."); the Declaration of G. Michael Bellinger in Support of Defendants Arent Fox LLP, Deloitte Touche Tohmatsu Services, Inc. and Deloitte Touche Tohmatsu Limited in Support of Joint Motion to Dismiss Complaint ("Bellinger Decl."); the Declaration of Stacey M. Gray in Support of Defendants Stacey M. Gray's and Stacey M. Gray P.C.'s Memorandum of Law in Support of Their Motion to Dismiss Plaintiff's Civil Action ("Gray Decl."); and the Declaration of John H. Ray, III, as well as the exhibits to these declarations.  Those facts drawn from Plaintiff's Complaint are taken as true for purposes of the pending motions.  *Faber* v. *Metro. Life*, 648 F.3d 98, 104 (2d Cir. 2011) (when reviewing a complaint for failure to state a claim, the court will "assume all well-pleaded factual allegations to be true" (internal quotation marks omitted)).

For convenience, Defendants Arnold E. DiJoseph, III's and Arnold E. DiJoseph, P.C.'s briefs are referred to as "DiJoseph Br." and "DiJoseph Reply"; Defendants Arent Fox LLP's, Deloitte Touche Tohmatsu Services, Inc.'s, and Deloitte Touche Tohmatsu's briefs are referred to as "Deloitte Br." and "Deloitte Reply"; and Defendants Stacey M. Gray's and Stacey M. Gray, P.C.'s briefs are referred to as "Gray Br." and "Gray Reply." Plaintiff's combined memorandum in opposition is referred to as "Pl. Opp."

Defendants entered into an engagement agreement (the "Engagement Agreement"). (Compl. ¶ 16). The Gray Defendants' representation of Caldwell was short-lived, however, and on December 21, 2011, Caldwell terminated the representation. (*Id.* at ¶ 17). Plaintiff alleges that the bases for the termination included the Gray Defendants' incompetence, malpractice, breach of fiduciary duties, and general misconduct amounting to good cause. (*Id.*).[3]

The Engagement Agreement detailed the compensation due to the Gray Defendants. Specifically, it indicated that Gray P.C. would "charge [Caldwell] for the legal fees incurred up to [the date of termination] and all expenses already incurred." (Compl. ¶ 18). The invoices Gray P.C. submitted to Caldwell for the period November 11, 2011, through December 12, 2011, show that Gray P.C. billed 20.452 hours of work at a rate of $500.00 per hour, and the invoices for the period December 13, 2011, through December 20, 2011, show that Gray P.C. billed 7.586 hours at that same rate. (*Id.*). Plaintiff alleges that because Caldwell had paid a retainer of $3,500, Gray P.C. is due approximately $10,500 in attorneys' fees. (*See id.* at ¶¶ 19-20). The Gray Defendants have not received payment for the legal services rendered.

Plaintiff represented Caldwell subsequent to the Gray Defendants' representation, during which time Caldwell settled his dispute with Deloitte. (*See* Compl. ¶ 30; Bellinger Decl., Ex. B).

---

[3]     Given the provocative nature of these allegations, the Court notes with surprise the absence of any corroborating evidence in the Complaint.

### 2.   The Involvement of Deloitte and Arent Fox and the Confidentiality and Settlement Agreements

On December 21, 2011, the Gray Defendants sent a letter to Deloitte's former counsel, Sidley & Austin LLP, indicating that the Gray Defendants would "place a lien on Mr. Caldwell's file along with any settlements, awards and severance amounts that Deloitte pays to Mr. Caldwell," with respect to the dispute between Caldwell and Deloitte. (*See* Compl. ¶ 21). Defendants Arnold E. DiJoseph, III ("DiJoseph") and Arnold E. DiJoseph, P.C. ("DiJoseph P.C.") (collectively, the "DiJoseph Defendants"), were retained by the Gray Defendants and supported their position in claiming a lien on Caldwell's file. (*See id.* at ¶ 22). Indeed, Plaintiff alleges that the Gray Defendants and the DiJoseph Defendants "continued and increased their unlawful interference with false threats of a 'charging lien' and frivolous, costly litigation, causing [Deloitte] to breach the settlement agreement" between Caldwell and Deloitte. (*Id.* at ¶ 22).

In support of this claim, Plaintiff points to a January 27, 2012 email from a partner at Deloitte's current counsel, Defendant Arent Fox LLP ("Arent Fox"), who stated to Plaintiff:

> [t]he only impediment [to settlement between Deloitte and Caldwell] is the Gray issue that [he was] trying to work through with [Deloitte]. I have endorsed the plan to NOTIFY Gray that her notice is flawed and that a settlement has been reached with Mr. Caldwell, and let Mr. Ray handle her. I await the client's view. The writing will be handled expeditiously; I need Gray out of the picture.

(*See id.* at ¶ 23). As a result of the statements in this email, Caldwell and Plaintiff agreed to allow Gray to be notified, and Arent Fox contacted Gray to inform her of the settlement between Caldwell and Deloitte. (*See id.* at ¶ 24).

According to Plaintiff, at that point in the negotiations, the parties to the settlement had reached an agreement on the material terms that was itself sufficient to constitute an enforceable contract.  (*Id.* at ¶ 28).  No written settlement agreement, however, had been executed.

On February 8, 2012, prior to any settlement agreement between Caldwell and Deloitte being executed, Arent Fox required that a confidentiality agreement be executed, pursuant to which a portion of the settlement funds for Caldwell would be placed in escrow.  (Compl. ¶ 28).  Arent Fox made clear that absent the execution of a confidentiality agreement, there would be no settlement between Caldwell and Deloitte.  (*Id.*).  In order to facilitate the settlement, on February 10, 2012, Plaintiff, Arent Fox, and the DiJoseph Defendants entered into the confidentiality agreement requested by Arent Fox (the "Confidentiality Agreement").  (*Id.* at ¶ 29).

The Confidentiality Agreement stated that it was "made and entered into by and among" Plaintiff (representing Caldwell), DiJoseph (representing Gray), and Arent Fox (representing Deloitte).  (Compl. ¶ 30).  It further recited that Caldwell and Deloitte "have agreed to settle fully and finally all differences between them arising out of [Caldwell's] employment with, and separation from, Deloitte and that [Caldwell] and Deloitte have memorialized this agreement in a Settlement Agreement."  (Bellinger Decl., Ex. C).  It stated that the parties to it (i.e., Plaintiff, DiJoseph, and Arent Fox) had agreed "[t]hat counsels Ray and Gray have a dispute regarding legal fees for legal services

5

purportedly rendered to Mr. Caldwell." (Compl. ¶ 31).  With specific regard to that dispute, the parties agreed that:

> Deloitte will place into an escrow account (the "Escrow Account") a sum certain which will constitute the total amount of attorneys' fees authorized pursuant to the Settlement Agreement.  Counsel agrees not to seek any amount of legal fees in excess of that held in the Escrow Account.  The apportionment of the fees between Ray and Gray will be determined either by binding arbitration or by a court of competent jurisdiction.  No funds will be distributed from the Escrow Account until a final order is issued by a Court of competent jurisdiction or until Ray and Gray reach a binding settlement of their claims and have each notified Deloitte of such binding settlement.

(Bellinger Decl., Ex. C).  The Confidentiality Agreement made clear that it was "binding upon Counsel," but did not indicate that it was binding upon their clients.  (*See id.*).

The settlement agreement referenced in the Confidentiality Agreement was then executed on April 17, 2012 (the "Settlement Agreement").  The Settlement Agreement was "made and entered into by and between" Caldwell and Deloitte, and was also signed by Plaintiff.  (Bellinger Decl., Ex. B).  Similar to the Confidentiality Agreement, the Settlement Agreement provided:

> Deloitte will deposit [a sum of money] into an escrow account for attorneys fees … This sum will constitute the total amount of attorneys' fees authorized pursuant to the Settlement Agreement. [Plaintiff and Ray] agree[] not to seek any amount of legal fees in excess of that held in the Escrow Account.  The apportionment of the fees held in the Escrow Account between [Plaintiff and Ray] and Stacey M. Gray, P.C. ("Gray") will be determined either by binding arbitration or a court of competent jurisdiction.  No funds will be distributed from the Escrow Account until a final order is issued by a Court of competent jurisdiction or until [Plaintiff and Ray] and Gray reach a written binding settlement agreement of their claims and each has notified [Deloitte] in writing of such binding settlement.

(Bellinger Decl., Ex. B).  Both the Confidentiality and Settlement Agreements provided that New York law would govern the agreements.  (*Id.* at Ex. B, C).

As of the date of this Opinion, the escrowed funds have not been released.

## B.    The Caldwell-Gray State Court Action and the Related Arbitration

On February 15, 2012, even before the settlement was finalized, Caldwell filed, with Plaintiff as his attorney, an action in New York Supreme Court, New York County, captioned *Victor F. Caldwell* v. *Stacey M. Gray and Stacey M. Gray, P.C.*, Index No. 101658/2012 (N.Y. Sup. Ct., N.Y. Co. 2012) (the "Caldwell-Gray Action").  Though nominally brought by Caldwell, the Caldwell-Gray Action was quite obviously designed to benefit Plaintiff; it was brought against the Gray Defendants in order to resolve the lien that they had asserted as to the attorneys' fees.  (Compl. ¶ 39; Gray Decl., Ex. 2).

The DiJoseph Defendants represented the Gray Defendants in the Caldwell-Gray Action.  (*See* DiJoseph Decl., Ex. G).  On March 13, 2012, the Gray Defendants filed a motion to dismiss, contending that the action should be dismissed in favor of arbitration pursuant to the Engagement Agreement.  (Compl. ¶ 45).[4]  On August 28, 2012, the New York State Supreme Court issued an order granting the motion to dismiss and ordering that Caldwell must "arbitrate the within fee dispute [with the Gray Defendants] in accordance with the engagement agreement."  (*Id.* at ¶ 49).  In that opinion, the

---

[4]    The Engagement Agreement required that "[i]f any fee dispute should arise between you and the Firm that cannot be resolved informally, it shall be settled by final and binding arbitration in New York City pursuant to Part 137 of the Rules of the Client Administrator — Attorney Fee Dispute Resolution Program."  (Compl. ¶ 47).

court also noted that the dispute between Caldwell and Plaintiff was "between attorneys and *settlement is encouraged.*" (DiJoseph Decl., Ex. D (emphasis in original)).

On September 6, 2012, Caldwell, again using Plaintiff as counsel, filed a fee dispute with the Attorney Fee Dispute Resolution Program. (Compl. ¶ 50).[5] Here, too, Caldwell's involvement was nominal. Defendant Gray opposed the arbitration on the basis that the amount at issue exceeded the jurisdictional amount of $50,000. (*See id.* at ¶ 51). Plaintiff alleges that, in the course of opposing the arbitration, the Gray and DiJoseph Defendants

> falsely claim[ed] that they had a "charging lien" based upon "recent changes in Section 475 and 475-a of the [New York] Judiciary Law" … for an amount in excess of the jurisdictional amount and that Caldwell "had absolutely no interest or ability to obtain any additional money from the Arbitration," based on his Settlement Agreement.

(*Id.*). Plaintiff further alleges that "[n]o reasonable attorney could have made such claims in good faith." (*Id.* at ¶ 52).[6]

## C.  The Gray-Ray and Ray-Gray Federal Court Actions

Perhaps because of perceived bars to arbitration, the Gray Defendants brought an action on July 29, 2013, in New York State Supreme Court against Plaintiff, entitled *Stacey M. Gray, P.C.* v. *Ray Legal Consulting Group*, Index No.

---

[5]     Plaintiff alleges that it offered to resolve the fee dispute with the Gray and DiJoseph Defendants in an American Arbitration Association arbitration, but that the offer was refused. (Compl. ¶ 35 n.2).

[6]     In the Complaint, Plaintiff cites additional claims that the Gray and DiJoseph Defendants asserted in arbitration as evidence of their bad faith. Specifically, Plaintiff alleges that the Gray and DiJoseph Defendants argued that the dispute was not between Caldwell and the Gray Defendants, but between Plaintiff and Gray P.C., in the face of clear statements by the Gray Defendants to the contrary. (Compl. ¶ 53).

156885/2013 (N.Y. Sup. Ct., N.Y. Co. 2013) (the "Gray-Ray Action").  (Compl.

¶ 67).  On September 9, 2013, Plaintiff removed the Gray-Ray Action to federal

court; it was assigned to the undersigned, and captioned *Stacey M. Gray* v. *Ray*

*Legal Consulting Group*, No. 13 Civ. 6336 (KPF).  (*Id.* at ¶ 71).

Two days after the Gray-Ray Action's removal, on September 11, 2013,

Plaintiff submitted a pre-motion letter indicating its intention to move to

dismiss the Gray Defendants' complaint.  (Compl. ¶ 80).  The next day, on

September 12, 2013, the Gray Defendants voluntary withdrew their action

pursuant to Federal Rule of Civil Procedure 41.  (*Id.* at ¶ 81).[7]  When Plaintiff

inquired as to why the Gray Defendants dismissed the action, counsel for the

Gray Defendants stated that it was their "prerogative to do" so after the action

was removed to federal court.  (*Id.* at ¶ 83).

On September 26, 2013, Plaintiff filed a mirror-image action of the Gray-

Ray Action in federal court; it too was assigned to the undersigned, and is

captioned *Ray Legal Consulting Group* v. *Stacey M. Gray, et al.*, No. 13 Civ.

6866 (KPF) (the "Ray-Gray Action").  (Ray Decl. ¶ 2).  The Gray Defendants have

moved to dismiss that action.  (*Id.* at ¶ 3).  That motion is resolved in a

separate Opinion and Order issued today.

### D.    The Instant Litigation

Plaintiff filed the instant lawsuit on September 26, 2013, the same day it

filed the Ray-Gray Action.  (Dkt. #1).  While the Ray-Gray Action focuses on

---

[7]    Federal Rule of Civil Procedure 41 provides, in relevant part, that "the plaintiff may dismiss an action without court order by filing [] a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."  Fed. R. Civ. P. 41(a).

counsels' respective entitlements to the escrowed attorneys' fees, this action seeks redress for Plaintiff's inability, to this day, to resolve the fees issue. Plaintiff has brought claims for tortious interference and civil conspiracy against the Gray and DiJoseph Defendants, a claim for breach of fiduciary duty against Deloitte and Arent Fox, and a claim for breach of the covenant of good faith and fair dealing against all Defendants. (*Id.*).

Plaintiff alleges that Defendant DiJoseph P.C. engaged "in a series of misconduct and schemes with [DiJoseph] and the Gray Defendants that undermined the whole purpose of the Confidentiality Agreement and wrongfully prevented Plaintiff from exercising its rights thereunder, by preventing any adjudication of their frivolous claims of a 'charging lien' adding additional delay and cost." (Compl. ¶ 95). But if Plaintiff's claims against the DiJoseph and Gray Defendants are obvious, those against Defendants Deloitte and Arent Fox are less so. In this regard, Plaintiff claims that "Defendants Deloitte and Arent Fox witnessed and had knowledge of [the acts of the DiJoseph and Gray Defendants], as Plaintiff provided email and telephone updates directly" to Defendant Deloitte's counsel, and that "Defendant Arent Fox also monitored the proceedings and attended the arbitration proceeding." (*Id.* at ¶ 97). As a specific basis for liability, Plaintiff alleges that on September 18, 2013, "Defendants Deloitte and Arent Fox refused to release the escrow funds, in spite of the clear case law establishing that no 'charging lien' existed and the Gray and DiJoseph Defendants' two-year campaign to delay and avoid any adjudication of the issue." (*Id.* at ¶ 84). Plaintiff contends that this "refusal

was in bad faith, and with a bias for [Deloitte's and Arent Fox's] self-interest in maintaining the confidentiality of the Settlement Agreement, and the conduct alleged therein." (*Id.* at ¶ 99; *see also id.* at ¶ 85).

Between November 25, 2013, and December 19, 2013, each group of Defendants submitted letters to the Court requesting a pre-motion conference on their anticipated motion to dismiss. (Dkt. #3, 6, 9, 12). Plaintiff responded to these letter requests. (Dkt. #4, 7, 11, 13). On January 14, 2014, the Court held a pre-motion conference during which it set a briefing schedule for Defendants' motions to dismiss. (Dkt. #17). Defendants filed their motions to dismiss on February 24, 2014 (Dkt. #22, 25, 31); Plaintiff filed a single opposition to all motions on April 4, 2014 (Dkt. #36); and the motions were fully submitted when Defendants filed their replies on April 18, 2014 (Dkt. # 40, 42, 44).

## DISCUSSION

### A.   Applicable Law

#### 1.   Motions Under Federal Rule of Civil Procedure 12(b)(1)

"It is a fundamental precept that federal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress." *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C.* v. *Dupont*, 565 F.3d 56, 62 (2d Cir. 2009) (internal quotation marks omitted). In that regard, "a district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." *Aurecchione* v.

*Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (internal quotation marks omitted); *accord Solowski* v. *Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir. 2013).

"A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a Rule 12(b)(1) motion to dismiss, "[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff, but jurisdiction must be shown affirmatively, and that showing [may] not [be] made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison* v. *Nat'l Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal citation and quotation marks omitted). Moreover, where subject matter jurisdiction is contested, a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits. *See Zappia Middle East Constr. Co.* v. *Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) ("On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing."); *accord Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) ("[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.").

### 2.     Motions Under Federal Rule of Civil Procedure 12(b)(6)

The standard of review for a motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted is "substantively identical" to the Rule 12(b)(1) standard.  *Lerner* v. *Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003).  Under Rule 12(b)(6), the Court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber*, 648 F.3d at 104 (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)).  The Court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions."  *Rolon* v. *Hennenman*, 517 F.3d 140, 149 (2d Cir. 2008); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678)).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco* v. *MSNBC Cable LLC*, 622

13

F.3d 104, 111 (2d Cir. 2010).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 154 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).  "[A] plaintiff's *reliance* on the terms and effects of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."  *Id.* (emphasis in original).

Under Federal Rule of Evidence 201, a district court may also "take judicial notice of documents filed in other courts … not for the truth of the matter asserted in the other litigation, but rather to establish the fact of such litigation and related filings."  *Kramer* v. *Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (holding that the Court may consider matters of which judicial notice may be taken under Fed. R. Evid. 201); *see also Global Network Commc'n, Inc.* v. *City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("'A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.'" (quoting *Int'l Star Class Yacht Racing Ass'n* v. *Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)).

## B.   Analysis

### 1.   Caldwell Is Not a Necessary Party

The Gray and DiJoseph Defendants each argue that this action must be dismissed because Victor Caldwell is not a named party.  The Gray Defendants couch their argument in terms of standing, asserting that Plaintiff lacks standing to pursue claims and seek relief on behalf of non-party Caldwell. (Gray Br. 12).  In support, the Gray Defendants point to Plaintiff's requested relief, which seeks an order from this Court directing Arent Fox LLP, as trustee of the Escrow Account, to release funds "as directed by" Caldwell.  (*Id.*).  The DiJoseph Defendants, by contrast, root their argument in Federal Rule of Civil Procedure 12(b)(7), contending that this action must be dismissed because Caldwell is a necessary party.  (DiJoseph Br. 11).  In particular, they assert that the Complaint demonstrates that Plaintiff "has no legal right to bring this action and if there was any actual theory upon which recovery could be made at all it would belong to [Caldwell]."  (*Id.*).

Plaintiff argues in response that its standing is predicated on the Confidentiality Agreement and its escrow provisions, and that it has an interest in and right to enforce that agreement.  (Pl. Opp. 26).  Plaintiff further contends that Caldwell is not a necessary party because he is not a signatory to the Confidentiality Agreement, and that upon resolution of the attorneys' fees dispute as required under the Confidentiality Agreement, the funds will be released by Caldwell.  (*Id.*).

As to this issue, Plaintiff has the better of the argument.  Contrary to the Gray Defendants' contentions, Plaintiff does not seek relief on Caldwell's behalf. This is clear from the allegations in the Complaint.  Plaintiff has alleged that Defendants have conspired together to coerce payment of over $166,000 from Plaintiff and Caldwell.  (Compl. ¶ 1).  Plaintiff seeks to recoup "the wrongfully inflicted legal fees and expenses, as well as lost profits, *incurred by Plaintiff* in responding to Defendants' tortious interference, and bad faith breach of the covenant of good faith and fair dealing and fiduciary duties."  (*Id.* at ¶ 3 (emphasis added)).  Plaintiff also seeks release of the funds held in escrow by Arent Fox, funds as to which Plaintiff claims entitlement for its representation of Caldwell.  Plaintiff's principal, not Caldwell, is the signatory to the Confidentiality Agreement that requires that an action be brought to settle the dispute with the Gray Defendants.  The fact that Plaintiff requests an order directing Arent Fox to release the funds as directed by Caldwell simply does not equate to a finding that Caldwell needs be a party here.[8]

The Confidentiality Agreement itself proves Caldwell's irrelevance to this action.  That agreement makes clear that the "apportionment of the fees [held in the Escrow Account] between [Plaintiff] and [Gray] will be determined either by binding arbitration or by a court of competent jurisdiction."  (Bellinger Decl., Ex. C).  The only other option under the Confidentiality Agreement is for the parties themselves to reach an agreement concerning the release of the funds in the Escrow Account.  (*Id.*).  It strains credulity that the Gray Defendants

---

[8]     Indeed, Plaintiff's request that Caldwell direct the release is superfluous; Caldwell does not have authority to direct its release.

16

endorse this standing argument in their motion to dismiss, considering their intimate involvement with the Confidentiality Agreement.

In short, although the Gray Defendants rest their argument on standing, that issue is not implicated by this case. Their argument is, as the DiJoseph Defendants correct identify, one under Rule 12(b)(7). But while DiJoseph identifies the correct procedural vehicle, he fails to present a viable argument for its application.

Rule 12(b)(7) provides that an action may be dismissed for failure to join a party under Federal Rule of Civil Procedure 19. Fed. R. Civ. P. 12(b)(7). In consequence, before ruling on a Rule 12(b)(7) motion, a court must first determine whether the absent party is a "necessary" party under Rule 19(a). *See Viacom Int'l, Inc.* v. *Kearney*, 212 F.3d 721, 724 (2d Cir. 2000); *Yusin Brake Corp.* v. *Motorcar Parts of Am., Inc.*, No. 13 Civ. 9223 (DLC), 2014 WL 2560612, at *11 (S.D.N.Y. June 6, 2014). Rule 19(a) instructs that an absent party must be joined, if feasible, where:

> (1) in the person's absence, the court cannot accord complete relief among existing parties; or (2) the person claims an interest relating to the subject of the action and is so situated that the disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b). *Viacom Int'l, Inc.*, 212 F.3d at 724. On the other hand, "[w]here a court makes

a threshold determination that a party is 'necessary' under Rule 19(a) and

joinder of the absent party is not 'feasible' for jurisdictional or other reasons,

the court must then determine whether the party is 'indispensable' under Rule

19(b)."  *Yusin Brake Corp.*, 2014 WL 2560612, at *11; *see also Marvel

Characters, Inc.* v. *Kirby*, 726 F.3d 119, 131-32 (2d Cir. 2013).

"[A] court should take a flexible approach when deciding what parties

need to be present for a just resolution of the suit."  *CP Solutions PTE, Ltd.* v.

*Gen. Electric Co.*, 553 F.3d 156, 159 (2d Cir. 2009) (per curiam) (internal

citation omitted).  Rule 19(b) specifies the factors a court must assess when

determining whether "in equity and good conscience, the action should proceed

among the existing parties or should be dismissed."  Fed. R. Civ. P. 19(b).

These factors include:

> (1) the extent to which a judgment rendered in the person's
> absence might prejudice that person or the existing parties; (2) the
> extent to which any prejudice could be lessened or avoided …
> (3) whether a judgment rendered in the person's absence would be
> adequate; and (4) whether the plaintiff would have an adequate
> remedy if the action were dismissed for nonjoinder.

*Id.*  "[W]hether a person is 'indispensable,' that is, whether a particular lawsuit

must be dismissed in the absence of that person, can only be determined in the

context of a particular litigation."  *Curley* v. *Brignoli, Curley & Roberts Assocs.*,

915 F.2d 81, 90 (2d Cir. 1990) (quoting *Provident Tradesmens Bank & Trust Co.*

v. *Patterson*, 390 U.S. 102, 118 (1968)).  If the court concludes that the party is

indispensable, then it must dismiss the action under Rule 19(b).  *Viacom Int'l,*

*Inc.*, 212 F.3d at 725.

18

Neither the Gray Defendants nor the DiJoseph Defendants have demonstrated that Caldwell is a necessary party to this action and, indeed, he is not.  The Court can accord complete relief among the existing parties to the litigation, and Caldwell claims no interest relating to the subject of the action.  Quite the opposite: Plaintiff seeks enforcement of the Confidentiality Agreement to which Caldwell is not a party.  That Caldwell is not a party to that Agreement underscores that he is not a necessary party here.  *See ConnTech Dev. Co.* v. *Univ. of Conn. Educ.*, 102 F.3d 677, 682 (2d Cir. 1996) ("A nonparty to a commercial contract ordinarily is not a necessary party to an adjudication of rights under the contract."); *Cadles of Grassy Meadows II, L.L.C.* v. *St. Clair*, No. 10 Civ. 1673 (JS) (ETB), 2012 WL 910137, at *3 (E.D.N.Y. Mar. 15, 2012) ("The Court can provide complete relief without GMAC's being joined because GMAC is not a party to the Note and cannot assert an interest in the subject matter of the action.").

What is more, the Settlement and Confidentiality Agreements make clear that Caldwell has relinquished any claim to the funds in the Escrow Account.  The Agreements provide that those funds have been designated for attorneys' fees, and that only a court, an arbitrator, or Plaintiff and the Gray Defendants, through binding settlement, may determine the funds' distribution.  Because Caldwell is not a necessary party, the Court need not determine whether he is indispensable, and this action may proceed in his absence.  *Viacom Int'l, Inc.*, 212 F.3d at 724 ("If a party does not qualify as necessary under Rule 19(a),

then the court need not decide whether its absence warrants dismissal under Rule 19(b).").

### 2. Plaintiff's Claim for Tortious Interference Succeeds Only in Part

Count One of the Complaint asserts a claim of tortious interference against the Gray and DiJoseph Defendants.  (Comp. ¶¶ 86-91).  Here, Plaintiff asserts both a claim for tortious interference with a contract and one for tortious interference with a prospective economic advantage and/or business relation.  (*Id.* at ¶ 87).[9]  For the reasons set forth in the remainder of this subsection, Plaintiff has adequately pleaded only the former.

### a. Plaintiff Fails Adequately to Plead a Claim for Tortious Interference with a Prospective Economic Advantage or Business Relation

Under New York law, to state a claim for tortious interference with a prospective economic advantage or business relation, the plaintiff must allege that "[i] it had a business relationship with a third party; [ii] the defendant knew of that relationship and intentionally interfered with it; [iii] the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and

---

[9]    There is no requirement that Plaintiff have pleaded these claims separately where, as here, the claims are founded upon the same transaction or occurrence and the Complaint makes clear that Plaintiff seeks relief under both causes of action.  *See* Fed. R. Civ. P. 10(b); *Pullen* v. *NorthStar Presidio Mgmt. Co., LLC*, No. 98 Civ. 771 (WWE) (DW), 1998 WL 696010, at *2 (D. Conn. Sept. 11, 1998) ("[T]he Federal Rules of Civil Procedure only require a party to parse out his claims into separate counts when each claim is founded upon a separate transaction or occurrence and when separation would facilitate the clear presentation of the matters set forth." (internal quotation marks omitted)).  Indeed, the Complaint states that "Caldwell and Plaintiff had a legally enforceable contractual relationship with Defendant Deloitte, as well as a prospective economic advantage and/or business relationship" (Compl. ¶ 87), thereby providing clear notice as to the nature of both claims.

[iv] the defendant's interference caused injury to the relationship." *Kirch* v.

*Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006).

Significantly for purposes of the present analysis, Plaintiff argues that

the particular agreement with which the Gray and DiJoseph Defendants

interfered was the initial, unwritten settlement among Plaintiff, Caldwell, and

Deloitte.  (Pl. Opp. 19).  On this point, Plaintiff contends that by February 8,

2012, it and Deloitte had "already negotiated the material terms of the

settlement agreement sufficient to constitute an enforceable contract," and that

this agreement did not include the existence of the escrow agreement

established by the Confidentiality Agreement.  (*See* Compl. ¶ 28).  From this,

Plaintiff argues that solely because the Gray and DiJoseph Defendants

interfered, the escrow provisions of the Confidentiality Agreement were

included in the final Settlement Agreement, to Plaintiff's detriment.  (Pl. Opp.

19).  Plaintiff also alleges that the Gray and DiJoseph Defendants interfered by

means of "false threats of a 'charging lien' and frivolous, costly litigation,

causing Defendant Deloitte to breach the [initial] settlement agreement."  (*See*

Compl. ¶ 22).  In particular, Plaintiff charges that Defendant Gray "sent a

series of threatening emails, falsely claiming an enforceable 'lien' and

threatening frivolous, costly legal action against Defendant Deloitte if it

released the funds agreed to as part of the settlement agreement" (*id.* at ¶ 25),

and, further, that the DiJoseph Defendants continued these "false claims

regarding a 'charging lien' and threatening Defendant Deloitte" (*id.* at ¶ 27).

These allegations satisfy the requirements that Plaintiff plead a business relationship with Deloitte (i.e., Deloitte would have released the funds allocated for attorneys' fees to Plaintiff once the settlement was finalized), and that the Gray and DiJoseph Defendants knew of the relationship and intentionally interfered with it.  It is at the fourth requirement — that Defendants' interference cause injury to the relationship, *Kirch*, 449 F.3d at 400 — where Plaintiff's claim fails.  Before getting there, however, the Court must analyze the third requirement that Defendants have acted solely out of malice, or used dishonest, unfair, or improper means.

The Complaint does not support an argument that the Gray and DiJoseph defendants "acted solely out of malice."  For starters, Plaintiff does not make this allegation outright.[10]  And irrespective of Plaintiff's allegation that the Gray and DiJoseph Defendants claims of a charging lien were baseless, the Court cannot conclude from these allegations that these defendants acted solely out of malice.  Indeed, the Gray Defendants' conduct can equally be attributed to their intent to obtain payment for their own legal services to Caldwell.  That this was an objective of the Gray Defendants is made pellucidly clear by the Confidentiality Agreement's memorialization of the dispute between Plaintiff and Gray "regarding legal fees for legal services purportedly rendered to Mr. Caldwell."  (Bellinger Decl., Ex. C).

---

[10]   Plaintiff's allegation that Defendant DiJoseph had "no substantial purpose other than to inflict needless legal costs and expenses on Caldwell and Plaintiff" (Compl. ¶ 34), is not the same as an allegation that DiJoseph acted solely out of malice.

Plaintiff recognizes the Gray Defendants' entitlement to payment in alleging that "Gray P.C. has only potentially earned approximately $10,500 in attorneys['] fees" for representing Caldwell.  (Compl. ¶ 20).  DiJoseph, as Gray's attorney, had a duty to zealously represent his client within the bounds of the law and standards of professional conduct.  *See Andrades* v. *Ecrole*, No. 06 Civ. 2573 (LBS), 2010 WL 3021252, at *3 (S.D.N.Y. July 23, 2010) ("[T]he New York Court of Appeals recognize[s] that an attorney's duty to zealously represent a client is circumscribed by an equally solemn duty to comply with the law and standard of professional conduct ... to prevent and disclose frauds upon the court." (internal quotation marks and citation omitted)).  Relatedly, DiJoseph had an independent duty to ensure that the attorneys' fees, or at least a portion thereof, provided for under the Settlement Agreement were provided to Gray for the services rendered to Caldwell.

Having failed to plead malice, Plaintiff could nonetheless satisfy the third requirement by pleading criminal or independently tortious conduct.  The New York Court of Appeals has instructed that "as a general rule, the defendant's conduct must amount to a crime or an independent tort.  Conduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other nonbinding economic relations." *Carvel Corp.* v. *Noonan,* 3 N.Y.3d 182, 190 (2004); *accord Freidman* v. *Coldwater Creek, Inc.*, 321 F. App'x 58, 60 (2d Cir. 2009) (summary order).  When a defendant's conduct is not criminal or independently tortious, liability can lie if "plaintiff can demonstrate that the defendant engage[d] in

23

conduct for the sole purpose of inflicting intentional harm on plaintiffs." *Valley Lane Indus. Co.* v. *Victoria's Secret Direct Brand*, 455 F. App'x 102, 106 (2d Cir. 2012) (summary order) ("There is, however, at least one exception to the general rule that the defendant's conduct must be criminal or independently tortious.  If the plaintiff can demonstrate that the 'defendant engage[d] in conduct for the sole purpose of inflicting intentional harm on plaintiffs,' then the wrongful means element is satisfied." (citing *Carvel Corp.*, 3 N.Y.3d at 190)).  Finally, courts hold that a defendant may also be liable if he has "employed wrongful means," with "'wrongful means' includ[ing] physical violence, fraud or misrepresentation, civil suits and criminal prosecutions." *Friedman*, 321 F. App'x at 60 (citing *Guard-Life Corp.* v. *S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183 (1980)).

Plaintiff has not alleged conduct by the Gray and DiJoseph Defendants that amounts to a crime, an independent tort, physical violence, fraud, or criminal prosecutions.  Plaintiff has alleged facts, however, charging that the Gray and DiJoseph Defendants engaged in misrepresentations, including some made in connection with civil lawsuits.  In particular, Plaintiff alleges that the Gray and DiJoseph Defendants "engaged in a pattern of overt acts for over almost two years" that included "false misrepresentations before the New York Supreme Court and the New York Attorney Fee Dispute Resolution Program, and bad faith voluntary dismissal of the proceeding before this Court to prevent the adjudication of the merits and delay the adverse resolution of their frivolous legal claims for no substantial purpose other than to inflict needless

legal fees and expenses on both Caldwell and Plaintiff." (Compl. ¶ 89). But even assuming that these allegations are sufficient to satisfy the requirement of wrongful means — and there are reasons to believe that they are not, *see Friedman*, 321 F. App'x at 60 ("The New York Court of Appeals has never held that any misrepresentation to a third party is sufficient to sustain a claim for tortious interference with prospective economic relations." (emphasis in original)) — they postdate the very business relationship between Plaintiff and Deloitte with which the Gray and DiJoseph Defendants are alleged to have interfered. In other words, the only conduct that could serve as the basis for Plaintiff's claim for tortious interference with a prospective economic advantage or business relation could not have caused the injury required for Plaintiff's claim, because that conduct occurred after the relationship was altered and after Plaintiff had agreed to enter into the Confidentiality Agreement. Thus, because the Complaint fails to allege that the Gray and DiJoseph Defendants' interference, if actionable, caused injury to Plaintiff's relationship with Deloitte, Plaintiff's claim for tortious interference with a prospective economic advantage or business relation is dismissed.

### b. Plaintiff Adequately Pleads a Claim for Tortious Interference With a Contract

The preceding analysis is only half of the tortious interference inquiry, however. To state a claim for tortious interference with contract under New York law, a plaintiff must allege "[i] the existence of a valid contract between the plaintiff and a third party; [ii] the defendant's knowledge of the contract; [iii] the defendant's intentional procurement of the third-party's breach of the

contract without justification; [iv] actual breach of the contract; and

[v] damages resulting therefrom." *Kirch*, 449 F.3d at 401-02 (internal quotation

marks omitted). In addition, "[a] plaintiff must allege that there would not have

been a breach but for the activities of defendants." *Sharma* v. *Skaarup Ship*

*Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990) (citing *Special Event Entm't* v.

*Rockefeller Center, Inc.,* 458 F. Supp. 72, 78 (S.D.N.Y. 1978)).

 "To be actionable, the interference must be improper, a determination of

which depends on the particular factual situation." *World Wide Commc'n, Inc.*

v. *Rozar*, No. 96 Civ. 1056 (MBM) (NRB), 1997 WL 795750, at *6 (S.D.N.Y.

Dec. 30, 1997). To determine whether the interference is "improper," a court

considers

> the nature of the conduct of the person who interferes (a chief
> factor in determining whether conduct is improper), the interest of
> the party being interfered with (whether in an enforceable contract
> or in a contract voidable and thus unenforceable or terminable at
> will), and the relationship between the parties.

*Guard-Life*, 50 N.Y.2d 183, 190 (1980); *accord Mina Investment Holdings Ltd.* v.

*Lefkowitz*, 184 F.R.D. 245, 252 (S.D.N.Y. 1999).

 Notably, a showing of tortious interference with a contract requires less

culpable conduct than tortious interference with a prospective economic

advantage or business relation. *See In Touch Concepts, Inc.* v. *Cellco P'ship*,

949 F. Supp. 2d 447, 476 ("While New York law recognizes the tort of

interference with both *prospective* and *existing* contracts, greater protection is

accorded an interest in an existing contract (as to which respect for individual

contract rights outweighs the public benefit to be derived from unfettered

competition) than to the less substantive, more speculative interest in a prospective relationship (as to which liability will be imposed only on proof of more culpable conduct on the part of the interferer)." (internal citation omitted)). Here, Plaintiff has pleaded that (i) an enforceable (albeit unwritten) contract existed between Plaintiff and a third-party, i.e., Deloitte; (ii) the Gray and DiJoseph Defendants had knowledge of this contract; (iii) these defendants intentionally procured Deloitte's breach of that contract by asserting false claims regarding a charging lien and threatening Deloitte with "frivolous, costly litigation if it released the funds agreed to as part of the settlement agreement"; (iv) Deloitte breached the agreement by requiring that the Confidentiality Agreement be executed; and (v) Plaintiff was injured as a result of the Gray and DiJoseph Defendants' conduct, in that it had to agree to its attorneys' fees being placed in the Escrow Account. (*See* Compl. ¶¶ 24-29, 86-91).

Whether Plaintiff can prove the allegations advanced in the Complaint remains to be seen. *See generally Marino Inst. of Continuing Legal Educ., Inc.* v. *Issa*, No. 12 Civ. 4320 (KPF), 2013 WL 6723614, at *5-9 (S.D.N.Y. Dec. 20, 2013) (discussing factors to be considered in determining enforceability of oral agreement). On a motion to dismiss, however, the Court must "constru[e] the complaint liberally, accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Aegis Ins. Services, Inc.* v. *7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013) (quoting *Chambers*, 282 F.3d at 152). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to

relief." *Sweet* v. *Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000). Here, the Complaint
adequately alleges a claim for tortious interference with a contract, and the
Gray and DiJoseph Defendants' motions to dismiss this claim are denied.

### 3. Plaintiff Fails Adequately to Plead a Claim for Civil Conspiracy

Separate and apart from the tortious interference claims, Plaintiff
advances civil conspiracy claims against the Gray and DiJoseph Defendants.
"Under New York law, there is no independent tort for [civil] conspiracy."
*Eaves* v. *Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 257 (S.D.N.Y. 2011);
*accord McCall* v. *Chesapeake Energy Corp.*, 509 F. App'x 62, 65 (2d Cir. 2013)
(summary order) ("There is no independent tort of conspiracy in New York.").
As a result, a claim for civil conspiracy may only lie if it is connected to a
separate underlying tort. *Ellan Corp., Inc.* v. *Dongkwang Int'l Co., Ltd.*, No. 09
Civ. 414 (LAP), 2011 WL 4343844, at *6 (S.D.N.Y. Aug. 15, 2011) (civil
conspiracy "requires the existence of an underlying wrong").

"To establish a claim of civil conspiracy, a plaintiff must demonstrate the
underlying tort, plus the following four elements: [i] an agreement between two
or more parties; [ii] an overt act in furtherance of the agreement; [iii] the
parties' intentional participation in the furtherance of a plan or purpose; and,
[iv] resulting damage or injury." *Meisel* v. *Grunberg*, 651 F. Supp. 2d 98, 119
(S.D.N.Y. 2009); *see also Eaves*, 785 F. Supp. 2d at 257. Stated differently, the
plaintiff "must establish facts which 'support an inference that defendants
knowingly agreed to cooperate in a fraudulent scheme, or shared a perfidious
purpose." *IMG Fragrance Brands, LLC* v. *Houbigant, Inc.*, 759 F. Supp. 2d 363,

386 (S.D.N.Y. 2010) (quoting *Snyder* v. *Puente De Brooklyn Realty Corp.*, 297 A.D.2d 432, 435 (3d Dep't 2002)).

The Gray Defendants argue that Plaintiff has failed to allege any facts that could satisfy any of the elements of its conspiracy claim.  (Gray Br. 10).  The DiJoseph Defendants argue similarly that Plaintiff has failed to state a claim for conspiracy because the Complaint alleges no specific underlying tort.  (DiJoseph Br. 16).  In response, Plaintiff argues that it has adequately pleaded a civil conspiracy predicated on the underlying tort of tortious interference.  (Pl. Opp. 24).

Inasmuch as the Court has dismissed Plaintiff's claim for tortious interference with a business relation, only the claim for tortious interference with a contract could suffice as a predicate for Plaintiff's civil conspiracy claim.  It cannot suffice in this setting, however, because the allegations of civil conspiracy are detached from Plaintiff's claim for tortious interference with its contract with Deloitte.

To be sure, in support of his claim for civil conspiracy, Plaintiff alleges the Gray and DiJoseph Defendants

> entered into an agreement for the purpose of engaging in an unethical "legal strategy" to coerce an exorbitant and unearned "legal fee" through the use of a pattern of dishonest threats and misconduct involving knowingly false and frivolous claims of a "charging lien" and a series of bad faith delay and litigation avoidance tactics for no substantial purpose other than to inflict needless legal fees and expenses on Caldwell and Plaintiff by prolonging the resolution of the false claims.

(Compl. ¶ 102).  Plaintiff further alleges that these defendants, among other things, intentionally made "false misrepresentations before the New York

29

Supreme Court and the New York Attorney Fee Dispute Resolution Program,"
and voluntarily dismissed the Gray-Ray Action filed before this Court "to
prevent the adjudication of the merits and delay the adverse resolution of their
frivolous legal claims." (*Id.* at ¶ 103). Finally, Plaintiff alleges that it has
suffered damages and injury in the form of legal fees, expenses, and the
prolonged resolution of the claims. (*See id.* at ¶¶ 102, 105). The problem with
Plaintiff's allegations is not one of content, but one of timing: All of these
allegations target conduct of the Gray and DiJoseph Defendants during legal
proceedings regarding the attorneys' fees dispute, and this conduct occurred
*after* the material terms of the settlement agreement were agreed to on
February 8, 2012, as alleged by Plaintiff.

"[A] plaintiff may plead conspiracy in order to connect the actions of the
individual defendants with an actionable underlying tort and establish that
those acts flow from a common scheme or plan." *Am. Preferred Prescription,
Inc.* v. *Health Mgmt, Inc.*, 252 A.D.2d 414, 416 (1st Dep't 1998); *see also
Ebusinessware, Inc.* v. *Tech. Services Grp. Wealth*, No. 08 Civ. 9101 (PKC), 2009
WL 5179535, at *15 (S.D.N.Y. Dec. 29, 2009) ("A civil conspiracy cause of
action may be allowed, however, in order to 'connect the actions of separate
defendants with an otherwise actionable tort.'" (internal quotation marks
omitted)). Plaintiff's allegations regarding its actionable tortious interference
claim are distinct from and predate its claim for civil conspiracy, thereby
precluding that claim from serving as an underlying tort for the civil conspiracy
claim. *See Am. Preferred Prescription, Inc.*, 252 A.D.2d at 416 (holding that the

plaintiff has failed sufficiently to allege an actionable underlying tort for its conspiracy claim where "all the identified contracts that defendants allegedly interfered with (and which are the predicates of the remaining causes of action)" were entered into prior to alleged scheme to conspire).  Plaintiff's failure to plead an actionable underlying tort for its civil conspiracy claim necessitates the dismissal of that claim.

### 4. Plaintiff Fails Adequately to Plead a Claim for Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff also claims a breach of the implied covenant of good faith and fair dealing against all defendants.  (Compl. ¶¶ 92-100).  Under New York law, "implicit in all contracts is a covenant of good faith and fair dealing in the course of the contract."  *DBT Gmbh* v. *J.L. Mining Co.*, 544 F. Supp. 2d 364, 384 (S.D.N.Y. 2008) (internal quotation marks omitted).  "The covenant 'embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.'"  *Tractebel Energy Mktg., Inc.* v. *AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007) (quoting *Dalton* v. *Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995); *see also Payday Advance Plus, Inc.* v. *Findwhat.com, Inc.*, 478 F. Supp. 2d 496, 503 (S.D.N.Y. 2007).  "In some cases, the covenant may require affirmative steps to cooperate in achieving the contract's objective."  *Tractebel Energy Mktg.*, 487 F.3d at 98.  To state a cause of action for breach of the implied covenant of good faith and fair dealing, "the plaintiff must allege facts which tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff."  *Dweck Law Firm,*

*L.L.P.* v. *Mann*, 340 F. Supp. 2d 353, 358 (S.D.N.Y. 2004) (quoting *Aventine Inv. Mgmt., Inc.* v. *Canadian Imperial Bank of Commerce*, 265 A.D.2d 513, 514 (2d Dep't 1999)).  As set forth in the remainder of this subsection, Plaintiff's good faith and fair dealing claim fails as a matter of law.

### a.    As to the DiJoseph Defendants

Plaintiff's claim for breach of the implied covenant of good faith and fair dealing as to the DiJoseph Defendants is discerned from its allegations that the DiJoseph Defendants refused to participate in settlement discussions, indicated that the matter would not be resolved quickly, and defended their client in legal proceedings regarding the attorneys' fee dispute.  (*See, e.g.*, Compl. ¶¶ 33-38).  To plead a claim, however, Plaintiff must allege facts that "tend to show that the defendant sought to prevent performance of the contract or to withhold its benefits from the plaintiff."  *Dweck Law Firm, L.L.P.*, 340 F. Supp. 2d at 358.  The allegations in the Complaint are insufficient to meet this burden.

The Confidentiality Agreement provides, in relevant part:

Deloitte will place into an escrow account (the "Escrow Account") a sum certain which will constitute the total amount of attorneys' fees authorized pursuant to the Settlement Agreement.  Counsel agrees not to seek any amount of legal fees in excess of that held in the Escrow Account.  The apportionment of the fees between Ray and Gray will be determined either by binding arbitration or by a court of competent jurisdiction.  No funds will be distributed from the Escrow Account until a final order is issued by a Court of competent jurisdiction or until Ray and Gray reach a binding settlement of their claims and have each notified Deloitte of such binding settlement.

(Bellinger Decl., Ex. C).  The DiJoseph Defendants' conduct has not prevented a court or arbitrator from resolving the dispute between Plaintiff and Gray, nor has it foreclosed the parties from reaching a binding settlement.  Rather, Plaintiff's allegations may be viewed as the DiJoseph Defendants discharging their obligation to protect the interests of their clients, the Gray Defendants, with respect to the latter's claim for legal fees from Caldwell.  Such conduct is not actionable.  "[T]he implied covenant does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract." *M/A-COM Sec. Corp.* v. *Galesi*, 904 F.2d 134, 136 (2d Cir. 1990) (quoting *Van Valkenburgh, Nooger & Neville, Inc.* v. *Hayden Publ'g Co.*, 30 N.Y.2d 34, 46 (1972)) (internal quotation marks omitted).

The allegations in Plaintiff's Complaint further refute its claim of bad faith.  Plaintiff alleges that the DiJoseph Defendants, on the Gray Defendants' behalf, filed suit in New York State Supreme Court against Plaintiff in order to resolve the attorneys' fees dispute between Gray and Plaintiff.  (Compl. ¶ 67).  In that regard, the DiJoseph Defendants sought to facilitate resolution of Plaintiff's dispute with the Gray Defendants.  That the DiJoseph Defendants sought dismissal of that litigation once it was removed to federal court imparts no bad faith to their conduct.  After all, not wanting to continue the lawsuit in federal court does not indicate an intent to prevent performance of the Confidentiality Agreement or to withhold its benefits from Plaintiff.  If Plaintiff

had proceeded with the action in state court, it may have obtained the exact resolution that it now alleges the DiJoseph Defendants frustrated.

The fact that the DiJoseph Defendants have not acquiesced in Plaintiff's requests to resolve its dispute with Gray in the fashion that Plaintiff desires, does not equate to a breach of the implied covenant of good faith and fair dealing.  Indeed, the Confidentiality Agreement does not require that the Gray Defendants and Plaintiff resolve their dispute in any particular manner. Instead, it merely provides that once the dispute is resolved by a court, arbitrator, or binding settlement, the escrowed funds will be released. Accordingly, Plaintiff has failed to plead a claim for breach of the implied covenant of good faith and fair dealing as against the DiJoseph Defendants.[11]

### b.   As to Arent Fox

Arent Fox argues that it could not have breached any covenant of good faith and fair dealing because it is abiding by the escrow provisions of the Confidentiality Agreement, the terms of which foreclose the release of the funds.  (Arent Br. 5-6).  Arent Fox also argues that it never sought to prevent performance of the contract or withhold its benefits from Plaintiff, but rather is adhering to the terms of the Settlement and Confidentiality Agreements.  (*Id.* at 6).  Plaintiff responds that Arent Fox can breach its duty of good faith and fair

---

[11]  Plaintiff relies on the prevention doctrine in support of its claim that the DiJoseph and Gray Defendants breached the implied covenant of good faith and fair dealing.  (Pl. Opp. 22).  The "prevention doctrine is often viewed as a corollary to the implied covenant of good faith."  *Indu Craft, Inc.* v. *Bank of Baroda*, 47 F.3d 490, 498 (2d Cir. 1995).  It "provides that "a party may not avoid performance of a contractual duty by preventing the occurrence of a condition precedent."  *Rosewell Capital Parners LLC* v. *Alternative Const. Tech.*, 638 F. Supp. 2d 360, 370 n.10 (S.D.N.Y. 2009) (quoting *Consol. Edison, Inc.* v. *Northeast Util.*, 426 F.3d 524, 528-29 (2d Cir. 2005)).  As no Defendant is attempting to avoid contract performance, the prevention doctrine is inapplicable to the instant case.

dealing even in abiding by the strict terms of the agreements.  (Pl. Opp. 28).[12]
Further, in the Complaint, Plaintiff alleges that Arent Fox breached its duty of
good faith and fair dealing by refusing to release the escrowed funds upon
proper demand and after receiving notice that the Gray and DiJoseph
Defendants breached their covenant of good faith and fair dealing.  (Compl.
¶ 98).  Plaintiff's position is untenable.

Although the covenant of good faith and fair dealing "incorporates any
promises which a reasonable person in the position of the promisee would be
justified in understanding were included, [] it does not include any obligation
that would be inconsistent with the express terms of the contract."  *Payday
Advance Plus, Inc.*, 478 F. Supp. 2d at 503.  The express terms of the
Confidentiality Agreement provide that:

> No funds will be distributed from the Escrow Account until a final
> order is issued by a Court of competent jurisdiction or until Ray
> and Gray reach a binding settlement of their claims and have each
> notified Deloitte of such binding settlement.

(Bellinger Decl., Ex. C).  Since (i) no final order has been issued by a court of
competent jurisdiction and (ii) Ray and Gray have not reached a binding
settlement, Arent Fox is precluded from distributing the funds.

Plaintiff takes undue comfort in *Serdarevic* v. *Centex Homes, LLC*, 760 F.
Supp. 2d 322, 333 (S.D.N.Y. 2010).  (*See* Pl. Opp. 28).  In *Serdarevic*, the court
recognized that a party may be in breach of the duty of good faith and fair

---

[12]  Plaintiff fails to differentiate its arguments between Arent Fox and Deloitte, despite their
being distinct parties with distinct arguments tailored to their respective positions.  The
Court has assessed Plaintiff's arguments with respect to the particular Defendant to
which they could pertain.

dealing even where it has abided by the strict terms of the contract, when the party alleged to be in breach "exercise[s] a right malevolently, for its own gain as part of a purposeful scheme designed to deprive plaintiffs of the benefits" of the "fruit of [their] bargain." 760 F. Supp. 2d at 333. Plaintiff has not alleged that Arent Fox engaged in such conduct. Although Plaintiff does allege that Arent Fox "refused to release the funds in bad faith, and with a bias for their self-interest in maintaining the confidentiality of the Settlement Agreement" (Compl. ¶ 99), that allegation bespeaks neither malevolent conduct nor a purposeful scheme designed to deprive Plaintiff of receiving the escrowed funds. Rather, because Arent Fox was "acting in [its] own self-interest consistent with [its] rights under [the] contract," it did not breach the covenant of good faith and fair dealing. *DeBlasio* v. *Merrill Lynch & Co., Inc.*, No. 07 Civ. 318 (RJS), 2009 WL 2242605, at *38 (S.D.N.Y. July 27, 2009) ("Defendants did not violate the implied covenant of good faith and fair dealing by acting in [their] own self-interest consistent with [their] rights under a contract." (internal quotation marks omitted)); *Suthers* v. *Amgen Inc.*, 441 F. Supp. 2d 478, 485 (S.D.N.Y. 2006) ("Plaintiffs have no support for the broad proposition that an entity violates the implied covenant of good faith and fair dealing by acting in its own self-interest consistent with its rights under a contract. Indeed, courts have refused attempts to impose liability on a party that engaged in conduct permitted by a contract, even when such conduct is allegedly unreasonable.").

The flaw in Plaintiff's argument is that it seeks to impose an obligation on Arent Fox that is nowhere in, and was not contemplated by, the Confidentiality Agreement — namely, a requirement that Arent Fox release the escrowed funds based solely on Plaintiff's representations concerning the Gray and DiJoseph Defendants' conduct and Plaintiff's assessment of the Gray Defendants' comparative entitlement to legal fees. Plaintiff cannot impose an obligation on Arent Fox not present in the Confidentiality Agreement in order to state a claim for breach of the covenant of good faith and fair dealing. *Oscar de la Renta, Ltd.* v. *Mulberry Thai Silks, Inc.*, No. 08 Civ. 4341 (RJS), 2009 WL 1054830, at *5 (S.D.N.Y. Apr. 17, 2009) ("[The implied covenant] does not operate to create new contractual rights; it simply ensures that parties to a contract perform the substantive, bargained-for terms of their agreement and that parties are not unfairly denied express, explicitly bargained-for benefits." (internal quotation marks omitted)); *Pitcairn Properties, Inc.* v. *LJL 33rd Street Associates, LLC*, No. 11 Civ. 7318 (JSR), 2012 WL 6082398, at *5 (S.D.N.Y. Nov. 20, 2012) (stating that "the implied covenant of good faith and fair dealing inherent in every contract cannot be used to create terms that do not exist in the writing," and dismissing the plaintiff's claim for implied covenant of good faith and fair dealing where the defendant "did not seek to prevent performance of the contract or to withhold the contract's benefits," but rather "abided by the contract"). No obligation can be implied on Arent Fox "that would be inconsistent with other terms of the contractual relationship." *State Street Bank and Trust Co.* v. *Inversiones Errazuriz Limitada*, 374 F.3d 158, 170 (2d

Cir. 2004) (internal quotation marks omitted)); *accord Times Mirror Magazines, Inc.* v. *Field & Stream Licenses Co.*, 294 F.3d 383, 394-95 (2d Cir. 2002). Accordingly, Plaintiff has failed to state a claim for breach of the implied covenant of good faith and fair dealing against Arent Fox.

### c.   As to the Gray and Deloitte Defendants

Plaintiff has made clear that its claim for breach of the implied covenant of good faith and fair dealing is predicated on the Confidentiality Agreement. (*See* Pl. Opp. 20).  Because neither the Gray Defendants nor Deloitte is a party to the Confidentiality Agreement, an action for breach of the implied covenant of good faith and fair dealing of that agreement cannot lie against them.  *Miller* v. *Wells Fargo Bank, N.A.*, — F. Supp. 2d —, 2014 WL 349723, at *12 n.7 (S.D.N.Y. Jan. 30, 2014) ("Although plaintiff brings his breach of the implied covenant of good faith and fair dealing claim against both Wells Fargo Defendants, Wells Fargo Insurance was not a party to the Mortgage and, therefore, could not possibly have breached the implied covenant."); *see also Indep. Order of Foresters* v. *Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir. 1998) (identifying that the implied covenant of good faith and fair dealing "relates only to the performance of obligations under an extant contract"); *American-European Art Associates, Inc.* v. *Trend Galleries, Inc.*, 227 A.D.2d 170, 171 (1st Dep't 1996) ("The second cause of action for breach of an implied duty of good faith and fair dealing by defendants … was also properly dismissed for lack of a valid and binding contract from which such a duty would arise.").

Plaintiff argues that although not a signatory, the Gray Defendants can be held liable for inducing the breach of the covenant of good faith and fair dealing by a signatory.  (Pl. Opp. 23).  Plaintiff provides no law to support this position and the Court is aware of none.  Accordingly, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing as against the Gray Defendants and Deloitte is dismissed.[13]

### 5.   Plaintiff Fails Adequately to Plead a Claim for Breach of Fiduciary Duty

Finally, Plaintiff advances claims of breach of fiduciary duty against Arent Fox and Deloitte.  (Compl. ¶¶ 106-14).  "A fiduciary relationship exists under New York law when one [person] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Flickinger* v. *Harold C. Brown & Co., Inc.*, 947 F.2d 595, 599 (2d Cir. 1991). "The elements of a breach of fiduciary duty are: [i] the existence of a fiduciary duty; [ii] a knowing breach of that duty; and [iii] damages resulting therefrom." *Johnson* v. *Nextel Commc'n, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011).  Plaintiff's claims in this regard fail, albeit for different reasons.

### a.   As to Arent Fox

Under New York law, an escrow agreement creates a fiduciary relationship between the escrow agent and the parties to the escrow transaction.  *Greenapple* v. *Capital One, N.A.*, 92 A.D.3d 548, 549 (1st Dep't 2012); *see also id.* ("An escrow agent owes the parties to the transaction a

---

[13]   Even assuming that Deloitte were a signatory to the Confidentiality Agreement (which it is not), Plaintiff would still fail to adequately plead this cause of action against Deloitte for the same reasons that it failed to plead it against Arent Fox.

fiduciary duty, and therefore the agent, as a fiduciary, has a strict obligation to protect the rights of [the] parties for whom he or she acts as escrowee."); *see also H&H Acquisition Corp.* v. *Fin. Intranet Holdings*, 669 F. Supp. 2d 351, 363 (S.D.N.Y. 2009) ("New York courts have repeatedly noted that an escrow agreement is a contract like any other." (internal quotation marks omitted)).

Because Arent Fox is the escrowee under the Confidentiality Agreement, it has a fiduciary duty to Plaintiff, a point that it does not dispute.  (Deloitte Br. 9).  Instead, Arent Fox argues that Plaintiff's claim for breach of fiduciary duty against it must fail because it has performed in accordance with the Confidentiality Agreement.  (*Id.*).  Plaintiff contends in response that despite Arent Fox having fully complied with the Confidentiality Agreement, it can still have breached its fiduciary duty by failing to "protect the rights of [the] parties for whom [Arent Fox] acts as escrowee," here, Plaintiff.  (Pl. Opp. 32-33 (citing *Greenapple*, 92 A.D.3d at 549)).  Plaintiff further argues that Arent Fox was obligated to protect Plaintiff from "losing all value in the escrow agreement." (*Id.* at 33).  Once again, Plaintiff seeks more than the law permits.

"An escrow agreement imposes a fiduciary duty on the escrow agent to *both* parties, not to deliver the escrow ... except upon strict compliance with the conditions imposed."  *Carruthers* v. *Flaum*, 450 F. Supp. 2d 288, 317 (S.D.N.Y. 2006) (emphasis added); *Great Am. Ins. Co.* v. *Canandaigue Nat'l Bank & Trust Co.*, 24 A.D.3d 1025, 1027-28 (4th Dep't 2005) ("As escrowee, CNB owed the other parties to the agreement the fiduciary duty of a trustee and was under 'a duty not to deliver the escrow to [anyone] except upon strict compliance with

40

the conditions imposed' by the escrow agreement." (citing *Fargo* v. *Burke*, 262
N.Y. 229, 233 (1933))).   Arent Fox has succeeded in doing just that.   The
Confidentiality Agreement mandates that Arent Fox retain the money in the
Escrow Account "until a final order is issued by a Court of competent
jurisdiction or until Ray and Gray reach a binding settlement of their claims
and have each notified Deloitte of such binding settlement."  (Bellinger Decl.,
Ex. C).   Neither of these conditions has been satisfied, and consequently, Arent
Fox has not released the funds.

Plaintiff overlooks the fact that Arent Fox has a fiduciary duty to all
parties with "a beneficiary interest in the trust."   *Iannizzi* v. *Seckin*, 5 A.D.3d
555, 556 (2d Dep't 2004) ("An escrow agent becomes a trustee of anyone with a
beneficiary interest in the trust." (internal quotation marks omitted)).   As such,
Arent Fox could not, and cannot, disregard its duty to Gray so as to satisfy
Plaintiff.   *H&H Acquisition Corp.*, 669 F. Supp. 2d at 363 ("[P]arties to an
escrow agreement cannot impose upon [the escrow agent] any obligations in
addition to its limited duties under the express terms of its contract." (internal
quotation marks omitted)).

Having agreed to the provisions of the Confidentiality Agreement, Plaintiff
must now abide by them.   Its attempt to circumvent the provisions through
improper means to the detriment of the other parties is transparent, and it is
conduct that this Court will not condone.   Because Arent Fox has acted in
accordance with its obligations under the escrow agreement, it has not
breached its fiduciary duty.   *See Carruthers*, 450 F. Supp. 2d at 317-18

41

(holding that there was no breach of a fiduciary duty where the parties performed as required under the escrow agreement); *H&H Acquisition Corp.*, 669 F. Supp. 2d at 364 (dismissing the plaintiff's claim for breach of fiduciary duty where the defendant acted in accordance with the terms of the escrow agreement).

### b.   As to Deloitte

Deloitte argues that Plaintiff fails to state a claim for breach of fiduciary duty against it because no fiduciary relationship existed between Deloitte and Plaintiff.  (Deloitte Br. 9-10).  Unlike Arent Fox, Deloitte is not an escrow agent, and it owes Plaintiff no fiduciary duty.  (*See* Pl. Opp. 31-32).  Instead, Plaintiff argues that Deloitte is liable because it joined in Arent Fox's alleged breach. (*Id.* at 32).  Having found that Arent Fox did not breach its fiduciary duty, the Court must likewise find that Deloitte had no imputed liability for breach of fiduciary duty.  For that reason, Plaintiff's claim for breach of fiduciary duty against Deloitte is dismissed.

### 6.   The Court Will Not Take Possession of the Funds in the Escrow Account Pursuant to Rule 67(a)

Arent Fox and Deloitte request that they be excused from this action and that the disputed funds be deposited with the Court pursuant to Federal Rule of Civil Procedure 67(a).  (Deloitte Br. 11).  Having dismissed all of Plaintiff's claims against Arent Fox and Deloitte, the Court excuses these Defendants from this action.  The open issue is whether the Court should take custody of the funds in the Escrow Account.  On this issue, Plaintiff argues that deposit of the funds with the Court is inappropriate here because Rule 67 cannot be used

to alter the contractual and fiduciary obligations agreed to by Arent Fox and

Deloitte.  (Pl. Opp. 34).  Deloitte and Arent Fox respond that the parties' rights

under the Confidentiality and Settlement Agreements will remain intact

whether the funds are in the custody of Arent Fox or the Court.  (Deloitte Reply

7).

> Federal Rule of Civil Procedure 67(a) provides:
>
> If any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party — on notice to every other party and by leave of court — may deposit with the court all or part of the money or thing, whether or not that party claims any of it.  The depositing party must deliver to the clerk a copy of the order permitting deposit.

Fed. R. Civ. P. 67(a).  Rule 67 is a "procedural device … intended to provide a

place of safekeeping for disputed funds pending resolution of a legal dispute

and not to provide a means of altering the contractual relationships and legal

duties of each party."  *Prudential Ins. Co. of Am.* v. *BMC Indus., Inc.*, 630 F.

Supp. 1298, 1300 (S.D.N.Y. 1986).  "It is within the court's discretion to permit

or deny such a deposit."  *United States* v. *New York State Supreme Court, Erie*

*Cnty.*, No. 07 Civ. 27S (WMS), 2008 WL 305011, at *3 (W.D.N.Y. Feb. 1, 2008).

The Court declines to exercise its discretion to permit Arent Fox to

deposit the escrowed funds with the Court, because to do so would alter "the

contractual relationship and legal duties" of Arent Fox.  Arent Fox and Plaintiff

agreed, pursuant to the Confidentiality Agreement, that Arent Fox would act as

the escrow agent for the settlement funds allocated for attorneys' fees.

(Bellinger Decl., Ex. C).  The Court will not disturb this agreement at this

juncture.  The cases relied on by Arent Fox in support of its position are

43

inapposite, as they concern parties who did not have a contractual obligation with respect to the money to which those parties requested that the court take custody. *See Harvey* v. *Fresquez*, No. 10 Civ. 5291 (CM), 2011 WL 855875, at *3-4, (S.D.N.Y. Mar. 8, 2011) (request made by bank who held funds on deposit as garnishee that were subject to a judgment issued by a state court); *Zerega Ave. Realty Corp.* v. *Hornbeck Offshore Transp.*, LLC, No. 04 Civ. 9651 (KNF), 2013 WL 1277019, at *1 (S.D.N.Y. Mar. 29, 2013) (request made by the defendant, a garnishee, who was served with a "Levy and Demand and Execution with Notice to Garnishee," notifying it that the plaintiff was a judgment debtor). Accordingly, Arent Fox is not permitted to deposit the funds in the Escrow Account with the Court pursuant to Rule 67(a).

## CONCLUSION

This lawsuit is in essence a dispute over attorneys' fees that should have been resolved long ago. Instead, the parties have precipitated its existence through multiple other lawsuits and an inexplicable resistance to reaching a resolution without court intervention. Considering that nearly all of the parties to this action, as well as the related actions, are attorneys, it is distressing to the Court that the present dispute has escalated to its current posture.

For the foregoing reasons, Arent Fox's and Deloitte's motion to dismiss the Complaint is GRANTED in full; the Gray and DiJoseph Defendants' motions to dismiss Plaintiff's claims for tortious interference with an economic advantage and/or business relation, civil conspiracy, and breach of the implied covenant of good faith and fair dealing are GRANTED; the Gray and DiJoseph

Defendants' motions to dismiss Plaintiff's claim for tortious interference with a contract are DENIED; and Plaintiff's claims for tortious interference with an economic advantage and/or business relation, civil conspiracy, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty are DISMISSED.

The Clerk of Court is directed to terminate Docket Entries 22, 25, and 31.

It is further ORDERED that Plaintiff, the Gray Defendants, and the DiJoseph Defendants shall appear for a pretrial conference on **September 3, 2014**, at **3:00 p.m.** in Courtroom 618 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York, to discuss how this case will proceed.

SO ORDERED.

Dated:   August 8, 2014
          New York, New York

_____
       KATHERINE POLK FAILLA
       United States District Judge